## F. F. LOW, Respondent, *v.* THE MAYOR AND COMMON COUNCIL OF THE CITY OF MARYSVILLE, Appellants.

The amendments to the Charter of the City of Marysville provide that the Common Council shall not take any stock " in any public improvement, or effect a loan for any purpose, without first obtaining the consent of the people, at an election held for the purpose." *Held*, that this could not be extended to improvements other than municipal in their character, and the Legislature did not intend to invest the City with authority to embark in speculative enterprises of improvement.

Under this provision, the City has no power to subscribe stock in the Citizens' Steam Navigation Company.

The words public improvements, when applied to a municipal government, must be taken in a limited sense, as applying to those improvements which are the proper subjects of police and municipal regulation—such as gas. water, almshouses, hospitals, etc.—and can not be extended to subjects foreign to the object of the incorporation, and beyond its territorial limits.

The powers of municipal corporations are limited to the express grant of their charters ; and the object of their creation is governmental, and not commercial.

The thirty-first section of the fourth article of the Constitution, provides that " Corporations may be formed under general laws ; but shall not be created by special act, except for municipal purposes." *Held*, that the term municipal is limited to governmental, and can not be extended to commercial purposes.

If the term public improvements, in the amended Charter, could be construed to extend to commercial speculations, then it would be in violation of said section of the Constitution : as it would be granting powers to a corporation by a special act for other than municipal purposes.

APPEAL from the District Court of the Tenth Judicial District, Yuba County.

The facts material to the points decided appear in the opinion of the Court.

*R. N. Mesick* and *G. N. Swesey*, for Appellant.

*Marshall* and *Mott*, for Respondent.

No briefs on file.

MURRAY, C. J., delivered the opinion of the Court. HEYDENFELDT, J., concurred.

The second section of an Act amendatory of An Act incorporating

the City of Marysville, and Acts supplementary to said Act, provides as follows:

" If the Common Council desire to take stock in any public improvement, or loan the credit of the city to any improvement, or effect a loan for any purpose, for a sum exceeding five thousand dollars, they shall submit a proposition for taking such stock, or effecting such loan, stating the amount of loan or stock, to the electors of the City of Marysville, at a special election to be held for that purpose, upon the Common Council giving twenty days' published notice of the same ; and if two-thirds of the electors vote in favor of such proposition or propositions, the Common Council shall have power to effect such loan or take such stock—but not otherwise,—and pledge the faith of the city for such loan or stock."

The question now presented for our determination, is as to the authority of the City of Marysville, under the provisions of this section, to subscribe stock in the " Citizens' Steam Navigation Company."

The objections raised are, first, that the Act does not purport to give to the Common Council of the city the right to embark in such an enterprise or speculation, but only to engage in such public improvements as come strictly within the proper exercise of municipal regulation ; and, second, if the Act under consideration was intended to authorize such an exercise of power, it is unconstitutional.

Upon the first point, it is clear to my mind that the section can not be extended to improvements other than municipal in their character, and that the Legislature did not intend to invest the City of Marysville with authority to embark in speculative enterprises of improvement, because of some fancied benefit which might inure to the city.

The words " public improvements," when applied to a municipal government, must be taken in a limited sense, as applying to those improvements which are the proper subject of police and municipal regulation—such as gas, water, alms-houses, hospitals, etc.—and can not be extended to subjects foreign to the object of the incorporation, and beyond its territorial limits. Without referring to the many privileges exercised by the free cities of Europe, some of which exercised almost all the powers of sovereignty, by virtue of royal patent or their own usurpation, we understand the powers of municipal corporations to

be limited—particularly in the United States—to the express grant of their charters : the object of their creation to be governmental, and not commercial.

We do not deny the authority of the Legislature, in the absence of constitutional restrictions, to confer plenary powers on municipal incor-porations ; but we think in the present case, that the second section, above quoted, can not fairly be construed as giving the power to sub-scribe for steamboat stock, on the hypothesis that it is a public im-provement, simply because one of the *termini* of said line is at Marys-ville. If such a construction were maintained, there is no enterprise in which the corporation might not embark, and no restraint upon a wild spirit of speculation.

The enormous consequences, resulting in the utter destruction of pri-vate rights, would justify this Court in rigid construction of the Act. But admitting that the language of the section is comprehensive enough to embrace the object in question, then we are of opinion that the Act is unconstitutional.

The thirty-first section of the fourth article of the Constitution, pro-vides that " Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes."

If we are right in assuming that the powers of municipal corpora-tions must be confined strictly to police or governmental purposes, and that the term was employed in this sense in the Constitution of this State, (as appears from the Constitutional Debates, as well as the gen-eral acceptation of the word,) then it follows that the power thus given by the second section, could not be conferred by special act; for as it would have been in violation of the Constitution, to create an incorporation by special act, for any other than municipal purposes, it follows that it would be equally unconstitutional to confer special power on a corporation already created. In other words, it would be doing, by two acts, that which the Legislature could not do by one ; and corporations for almost every purpose might be created by special act, by first incorporating the stockholders as a municipal body.

Two cases have been cited by the appellants, to sustain the authority of the Legislature to confer this power upon a municipal corporation ;

neither of which is applicable, on account of a want of a similar constitutional provision to that of ours.

In the case of the Police Jury Right Bank of the Parish of Orleans v. The Succession of John McDonough, the power of the Legislature of Louisiana to authorize a municipal corporation to subscribe for stock in a railroad, was affirmed, on the ground that there was no constitutional inhibition.

In the case of Sharpless v. The City of Philadelphia, the same question arose. In deciding that case, the learned Judge said : " That the creation of a municipal corporation, or the enlargement of its powers, subsequent to its origin, is the exercise of a legislative power, is too plain for argument ; but to what extent can its powers be enlarged, and what additions may be made to the original purposes for which it was created,—or, in other words, how far may the Legislature go in the exercise of a legislative power ? I submit that there is no limit to this authority, until it is met by the mandate of the Constitution—thus far, and no farther." Again, the following language is used by another of the learned Judges : " By subscribing to the stock of these railroad companies, the City of Philadelphia will become a member of the companies. They are private corporations. Intending to become common carriers, they will assume large responsibilities, a share of which must fall on each corporator. The enterprise is costly and hazardous, and may result in great pecuniary profits, or disastrous losses. Is it a municipal purpose? Does it come within the circle of objects which municipal corporations were designed to accomplish? Without going into the history and common law of such corporations, I unhesitatingly answer these questions in the negative. There is no congruity between such an enterprise and the legitimate purposes of municipal corporations." They were designed to regulate the internal affairs of the places in which they were located—police, health, streets, lawns, alleys, and the like, are the appropriate subjects of municipal administration; and though a city may go beyond its boundaries to purchase necessaries for its existence, safety and comfort, yet its jurisdiction is properly exercised only within its territorial limits, and on subjects that pertain to its domestic economy and well-being. Railroads to connect distant points of country, to develop physical re-

sources, are great public benefactions, and emphatic expressions of the energies of an age distinguished for its activity and bold adventure. But they come not within or near that class of objects which we have been taught to consider as municipal purposes. Yet when the Legislature enables a city to lend a hand to such enterprises, where is the constitutional provision which the judiciary can say is violated?"

From which it will appear, that not alone is this case no authority whatever, but that such subjects are not within the purposes of municipal corporations; and that if the Constitution of Pennsylvania had contained a provision similar to that of this State, such Act would have been held void.

We do not consider it necessary to multiply authorities or arguments on this point.

The Court below is directed to vacate the judgment, rendered for one thousand dollars, as it does not appear that any damage has resulted to the plaintiff, and to enter judgment for the plaintiff with costs in conformity with this opinion.