## SMITH vs. MAYOR, &c., OF SACRAMENTO CITY.*

*Sixth District Court, for Sacramento Co., November, 1857.*

INJUNCTION—COURTS OF EQUITY—EMPLOYMENT OF COUNSEL ABROAD
BY A MUNICIPALITY.

Courts of equity will restrain certain acts of a municipal government by injunction.

An individual tax payer can complain separately of an injury common to him and all the other tax payers living under one municipal government, and by which he sustains no special injury.

The legislature cannot confer upon a municipal government other legislative powers than those which are *essential* to the due attainment of the local ends for which it is instituted.

The funds collected by municipal taxation can!orily be applied to municipal purposes.

The representatives of municipal corporations, as trustees of the corporation property, whether acquired by taxation or otherwise, come peculiarly within the province of a court of equity.

The facts are reported in the opinion.   On motion to dissolve an injunction.

*Clark & Gass, Sunderland,* and *Long & Morrison,* for plaintiff.

*G. C. Moore,* city attorney.

BOTTS, J.—In May last the plaintiff filed his bill on the equity side of this court, describing himself as a tax-payer, of the city of Sacramento, alleging that the mayor and common council of said city had' by ordinance, appropriated the sum of $5,000 of the funds of the city, raised by taxation and licenses, to the employment of the legal services of one Alpheus Felch, to assist the attorney general of the United States in opposing the confirmation of the grant to John A. Sutter, now pending in the Supreme Court of the United States ; alleging also that the said mayor and common council have transferred the said sum of $5,000 from the debt and interest fund to the contingent fund, with a view to drawing a warrant in favor of said Felch, upon said contingent fund ; praying that the mayor be restrained from drawing such warrant, and the treasurer from paying it, if drawn ; and " that the mayor and common council be restrained and enjoined from taking the money belonging to the said debt and interest fund, and paying it to the contingent fund for the payment of such warrant, and that

* See ante p. 70.

the moneys belonging to said debt and interest fund, may be required to be appropriated to the purposes for which they were collected."

Upon this application an order was made upon the defendants to show cause why the prayer of the complaint should not be granted, with the usual restraining order until hearing. On the 18th of May an order was made, purporting to be upon submission of the case, perpetually enjoining the defendants "ever after from using or appropriating the money in or belonging to the debt and interest fund and sinking funds, for any purpose whatever, other than such for which they were created." The defendants were further restrained from drawing or paying any warrant to Alpheus Felch until the further order of this court.

At the same time that the foregoing orders were made by my learned and respected predecessor, he filed that which, in form and style, might be called an opinion* in the case, in which he upholds the right of the common council to make the appropriation to Felch, but totally denies the right to transfer the moneys from one fund to another ; and declares that, when it is satisfactorily proved to him, that the funds so diverted have been restored to their proper account, he will "dissolve the injunction so far as to permit the mayor to draw his warrant in favor of Alpheus Felch, for the sum of $5,000, upon the general fund."

The defendants come now and proffer evidence of the restoration of the disturbed funds to their original position, and ask for a dissolution of the injunction.

The first point made by the defendants' counsel is, that the case has been virtually decided, and that nothing remains for the court, except to pass upon the testimony offered. I think otherwise ; the restraining order which it is proposed to dissolve, is continued, until further order of the court. If the order had run that the restraining order should continue until the happening of a certain event, even if that event had been the production of testimony that another order of the court had been complied with, there might have been some warrant for the defendants' position. But there is a vast distinction between the order supposed, and the one really made. As to the intention expressed in the opinion, it is gratuitous, informal, and not intended, I apprehend, to bind the court. An opinion is supposed to furnish the

---

* See ante p. 70.

reasons for the conclusion at which the court has arrived, but it is the judgment or order that must decide the question of *res adjudicata.*

In this view of the case nothing has been decided, but that the order restraining the defendants from intermingling the funds, should be made perpetual: and the defendants now asking me to dissolve the injunction, upon them lies the *onus* of satisfying me of the propriety of the order for which they ask.

This point being determined, the defendants say, this is not a proper case for the interposition of a court of chancery; and to this point they cite the opinion of chanceller Kent, in *Movers* vs. *Smedley* (6 *Johns. Ch. R.*) The case is directly in point, and the great jurist whose opinion is referred to, declares, unequivocally, that the supervision and control of the acts of public officers belong to the common law, and not to the equity courts. Those who remember the celebrated struggle between Ellesmere and Coke, need not be reminded of the rivalry between the law and equity courts of Great Britain; this spirit extended, in a measure, under the old system, to their representatives in America; but now, that the two systems are united in one tribunal, it cannot be a matter of much importance whether the proceedings of the city council are brought by *certiorari* before the law face of the court to be arrested by prohibition, or before the equity front of this Janus-faced tribunal, to be stayed by injunction. Indeed, our own Supreme Court, in the late case of *People vs. Supervisors of El Dorado co.,* (7 *Cal., July T.*) seem to have been impressed with the view that there was no material difference between the two remedies. In that case the petitioner asked for a writ of prohibition, or of injunction, for the purpose of restraining the action of the board in regard to the allowance of the account. The court overruled the decision in *People vs. Hester,* (6 *Cal. Jan. T.*) where they held that a *certiorari* would not lie to the board of supervisors, saying, they suppose it was this erroneous decision that misled the court below in refusing the prohibition; but they add, "it is not perceived on what ground the court below refused to interpose by injunction." This subject, it appears to me, is very ably handled by Mr. Justice Strong, in the case of *Millhan vs. Sharp,* decided at the New York general term of the Supreme Court, April, 1853, and reported in 15 *Barb.* 193. He holds that the representatives of municipal corporations exercise two distinct functions.

In their legislative capacity, they pass laws for the government of the city, and in the discharge of this duty they are beyond the control of the courts, either of law or equity ; but with respect to the property of the corporation—and this is applicable to property acquired by taxation or otherwise—they are trustees, pledged to administer it according to the requirements of the charter ; and as trustees they come peculiarly within the province of a court of equity. Perhaps a more difficult question still remains. Can an individual tax-payer complain separately of an injury common to him and all the other tax-payers of the city, and by which he sustains no special injury ? The right has been sustained in New York, both in *Christopher vs. city of New York*, 13 *Barb.* 567, and the case above cited of *Milhan vs. Sharp.* The doctrine is a convenient one, although it is opposed to the current of English authorities, and the analogy of the doctrine of public nuisances. It is easier to perceive the interest the defendant, as a tax-payer, has in preventing a waste of the corporate porperty, than how he is authorised to protect the creditors of the city, by requiring the separate funds to be kept intact.

Having thus gnawed our way through the bark, we have arrived at the pith of this case. Does the charter of the city confer upon the common council the power to make this appropriation to Alpheus Felch for legal services, to be rendered in contesting the validity of the Sutter title ? The defendants, when it comes to this, admit the council are a body of limited powers, and that it devolves upon them to show, affirmativly, that they possess the power they have attempted to exercise. To sustain this claim, the city attorney points us to the opening paragraph of the 7th section of the city charter. The 7th section purports to define the powers of the city council. It begins thus : " The said city council shall have power to make by-laws and ordinances not repugnant to the Constitution and laws of the United States, or of this State ;" and this, he argues, would be of itself sufficient to cover the power claimed. Indeed, it would. If this clause stood alone it would be sufficient to cover, not only this power, but to include all others, and to convert the city council into a body of general, instead of limited jurisdiction. But it does not stand alone ; it is only a part of a sentence, separated from the remainder by a semicolon. To make by-laws and ordinances not repugnant to the Constitution and the laws of this State and the United States, in and about what subjects ? This section goes on to enume-

rate: " To prevent and remove nuisances; to fix and collect licenses, taxes," etc., etc., with a long and specific enumeration of the powers of the common council, in which I cannot find a single word touching the employment of Alpheus Felch or anybody else, to attend to suits in the Supreme Court of the United States. It is true that this paragraph winds up with these general words: " And to pass such other by-laws and ordinances for the regulation and police of said city, as they may deem necessary." Upon this clause, it is to be remarked, first, that all such general expressions are to be taken in connection with, and in subordination to, the specific enumeration of powers preceding it; and, secondly, that it is difficult to perceive how this Felch appropriation is in any manner connected with the " regulations and police" of the city.

The general rule is, that a delegated power cannot be delegated; and the doctrine of representative governments is, that the people are the general source of all power, and that the legislature possess but a delegated authority. It has been universally held therefore, that they could not confer the powers of government upon others. To this general and invaluable rule, cities, counties, and other *quasi* corporations, form the exception. Diversified as are the interests of these local communities, over and above the general government, they need a special government for local and municipal purposes. For instance, men in a crowded city must be subjected to restrictions that, if appplied to a denizen of the country, would be intolerable, because unnecessary. Hence, there must be a local law of nuisances different from the general law; streets are to be regulated by other rules than those that suffice for ordinary highways. Special legislation involves the necessity of special taxation, and whatever may have been the origin of municipal corporations, their present character is undoubtedly determined by the considerations to which we have alluded. Resting, then, on necessity, and forming, as they do, an exception to the general rule, that the legislature cannot delegate the powers of government, it follows that the legislature itself can confer upon these municipalities only those powers that the nature of the institution, and absolute necessity demand. So it was held, in the case of *Lowe vs. The city of Marysville*, 5 *Cal.* 214, that any act of the legislature that would confer upon a municipal corporation any other than governmental or police powers, would be unconstitutional. If it were otherwise, if the

legislature could confer general powers of government upon these sub-agents, directing, as they undoubtedly may, the manner of their selection, we might soon, in spite of our popular Constitution, possess a representative government only in name.

If the power of taxation, then, is authorised only so far as may be necessary for municipal purposes, it follows that the funds collected by taxation can only be applied to municipal purposes. It is true, it may sometimes be difficult to draw the line, and determine whether a particular thing comes within the term " municipal," but that there are other things, and I think this proposed employment of Mr. Felch is one of them, of which it may unhesitatingly be pronounced, that they are not necessary for " police or governmental purposes."

The powers of the city council are enumerated in the 7th section of the charter, and it will be seen, at a glance, that they appertain exclusively to what may be called police regulations. As to the subject of legal services, it did not escape the attention of the legislature ; they provide that all suits, matters and things of a legal nature, in which the city may be interested, shall be committed to the charge of an attorney, *to be elected by the qualified electors of the city.* But, it is said, it could not be intended that the city attorney should attend the Supreme Court of the United States, and that this is a case of legal interest overlooked by the framers of the city charter. If by this is intended that the legislature have wholly failed to empower the city government to employ counsel in the Supreme Court of the United States, the proposition meets my hearty approbation.

If this appropriation be not a diversion of the city funds from the purposes to which they are legally devoted, I know no limits to the power of the common council of the city of Sacramento ; at least so far as the important subjects of taxation and appropriation are concerned.

Let the order enjoining the mayor of the city of Sacramento from drawing, and the treasurer of the said city from paying any warrant, if drawn, in favor of Alpheus Felch, or any other person for his use, in pursuance of an ordinance passed by the common council of the city of Sacramento on the —— day of ——, appropriating the sum of five thousand dollars to said Felch for legal services in contesting Sutter claims within said city, be made perpetual.