[Sac. No. 1292.   Department One.—March 18, 1905.]

VALLEJO FERRY COMPANY, Respondent, v. CITY OF VALLEJO et al., Appellants.

MUNICIPAL CHARTER—WHARF INTERFERING WITH FERRY—INJUNCTION. —The right of the city of Vallejo, under its charter, to establish a wharf on its water-front at the foot of a street, and to determine the necessity therefor by the ordinance authorizing its construction, cannot be exercised in such a manner as to injure or destroy ferry-rights at the foot of a parallel street vested in others by the city, without pretense of compensation, and the city may be enjoined from interfering with the operation of the ferry in the mode of construction of such wharf.

ID.—LIMITED POWER OF CITY TO BUILD WHARF—OWNERSHIP OF WATER-FRONT—POWER OF GENERAL GOVERNMENT INAPPLICABLE.—The city of Vallejo does not own its water-front, and in building a wharf it has no general, municipal, or governmental powers, but only such powers as are given by its charter, which does not clothe it with an absolute right to construct a wharf irrespective of the vested rights of others. The power vested in the general government, which is sovereign over navigable waters such as Mare Island Straits, to improve the same, without compensation for injury, cannot apply to the city of Vallejo, which has no such power.

APPEAL from a judgment of the Superior Court of Solano County and from an order denying a new trial.   A. J. Buckles, Judge.

The facts are stated in the opinion.

L. G. Harrier, and J. M. Gregory, for Appellants.

F. N. Hall, for Respondent.

CHIPMAN, C.—This is an action to restrain the board of trustees of the city of Vallejo from constructing a wharf extending from the foot of Virginia Street into Mare Island Straits, a navigable body of water lying between said city and Mare Island. The court decreed that defendants might proceed to erect the proposed wharf according to the prepared plans of defendants when modified in the manner designated in the decree and so as not to interfere with the enjoyment by plaintiffs of its ferry franchise.

Defendants appeal from the judgment and from the order denying their motion for a new trial. The action was begun in 1897 and was tried in 1899, but for some unexplained reason was not brought here until in April, 1904. There is but little, if any, controversy concerning the facts as shown by the evidence. The disagreement is rather as to the legal effect of the facts. Georgia and Virginia streets in the city of Vallejo are parallel, and run due east and west, terminating on the west at the water-front on Mare Island Straits, Georgia Street being next south of Virginia Street. Many years ago a wharf was extended from the foot of Virginia Street several hundred feet across the flats to deep water, at the end of which was a landing-place for vessels. This wharf, however, "had," as stated by defendants in their brief, "for a long time been practically deserted, and at the time of this action was really no wharf at all." On March 18, 1896, the city, after having advertised according to law for bids, sold, and by ordinance granted, to one Whitney, and his assigns, for the sum of $10,151 and the payment of a license-tax of forty dollars monthly, a franchise to construct, keep, and take tolls upon a public ferry running between the city of Vallejo and Mare Island Navy Yard, for the term of twenty years. On March 28, 1896, Whitney conveyed all his rights under this franchise to plaintiff. The ordinances fixed the ferry-landing on the Vallejo side where it had previously been for many years and particularly described it as it there was and substantially still is, at the end of the wharf which extended out several hundred feet from the foot of Georgia

Street. The landing was owned by private persons from whom plaintiff purchased it, and spent considerable money in improving it. The ordinance also described the slip on the Mare Island side established by the United States naval authorities, to which the ferry was to run. In June, 1897, the city decided, by resolution duly passed, to construct a new wharf at the foot of Virginia Street in the place of the old wharf; it had plans prepared, which were adopted, and bids were invited to carry out such decision. These plans contemplated a wharf which would extend one hundred and fifty feet further west into the straits than the old Virginia-Street wharf, and about two hundred and sixty-five feet further west than the ferry-slip on the Vallejo side of the straits, and was to terminate in a broad head or pier, one wing of which extended some feet south of the south line of the approach to the pier. The court found that this projecting arm of the pier, if constructed according to the proposed plans for the new wharf, "will extend in front of the entrance of said slip and will interfere with and prevent free ingress and egress of said ferry-boats of plaintiff to and from said ferry-slip last mentioned, and will obstruct the use by said plaintiff of said ferry-slip and will daily, when the tide is strongly ebbing or flowing, entirely prevent plaintiff from carrying on said ferry business and prevent plaintiff from conducting said ferry and will inflict on plaintiff great and irreparable injury and damage and plaintiff has no adequate relief or remedy at common law for said injury and damage." The general course of the straits is nearly northwest and southeast, and the current is strongest at flood tide on the Vallejo side. The ferry-slip was constructed with its opening northwesterly for greater safety and ease in entering and departing with the ferry-boat. The northeasterly side of the slip is one hundred and forty feet long, and at its extreme end is only about one hundred and twenty-five feet from the southern wing of the proposed wharf on Virginia Street. The distance between the Vallejo and Mare Island slips is about fifteen hundred feet. The evidence was without conflict that the current is strong in the straits because of the narrowness of the deep channel; that with the wind from the north or northwest and on an ebb tide, or with the customary southerly wind and a flood tide, the ferry-boat would collide with the south wing of the proposed

wharf if built; that owing to the prevailing winds and currents which the ferry-boat must encounter, and owing to the fact that vessels are frequently anchored along the straits between Mare Island and Vallejo, the ferry-boat cannot be confined to nor can it take a direct course from slip to slip, but must describe the arc of a circle to reach the Vallejo slip, thus bringing the boat in close proximity to the proposed new wharf and subjecting it to imminent danger of collision with it.   The opinion of witnesses who are masters of vessels and pilots familiar with existing conditions was uniformly to the effect that the ferry-boat could not be safely operated from the Vallejo slip if the city should build the wharf upon the proposed plan.   The evidence was also without conflict that the proposed plans for the Virginia-Street wharf could be modified to its advantage by omitting the southerly wing or L, and extending the wharf northerly instead.   The defendants called but one witness, Mr. Otto Von Geldern, a civil engineer of long and wide experience.   He testified: "I have made special examination of the situation with reference to the landing of the ferry-boat at Georgia-Street wharf as it would be affected by the proposed wharf on Virginia Street." He was shown a diagram representing the situation as it would be upon the completion of the new wharf, and was asked if the ferry-boat could operate under the circumstances shown by the diagram.   He testified: "Under these circumstances as existing now, the ferry-slip pointed in this way, the wharf [the new wharf] extended 150 feet, making this a defined corner [referring to the south wing].   I don't think that ferry-boat could manipulate there. . . . The flood tide and the wind as it generally blows on this coast would drive the ferry-boat on to the corner of the extended wharf."   He stated that the situation might be improved by changing the direction of the ferry-slip so as to point directly across the current; he thought that would be feasible, but he added: "I do not want to make that definite statement.   There are tides and winds when it might be different."   He further testified that "there is no apparent reason why the pier-head of the proposed wharf should be carried out that way (i. e. by the south wing), when it will be just as well the other way.   The conditions are rather crowded any way."   Again: "The crowded condition of affairs could be obviated by diverting the Virginia-

Street wharf over to the northwest, starting at about the terminus of the present wharf. . . . In that case there would be no trouble at all to run the ferry.'' Plaintiff's is the only ferry crossing to Mare Island from Vallejo. Most of the government employees at the navy yard reside at Vallejo, the number varying from five hundred to over seventeen hundred, who cross at different hours daily by the ferry. There is, besides this, considerable miscellaneous traffic by the ferry. The service is conceded to be of considerable importance to the people of Vallejo and also to the government. The evidence is, that the service is satisfactory to plaintiff's patrons, and is adequate to the requirements of the traffic. Appellants' contention to the contrary finds no support in the evidence.

It is contended that the finding of the court is not supported by the evidence that the injury to plaintiff would be irreparable if allowed to build its proposed wharf. Because, first, plaintiff could extend the northern arm of its slip; second, it could change the direction of its slip; and third, it could improve its boat. There is no evidence that a different or other boat would change or improve matters. The other two means of avoiding the injury rest upon the testimony of Mr. Von Geldern. They were suggested by him as a possible solution in case the new wharf should be built upon the proposed plans, but he was not willing to testify definitely that it would be feasible to change the direction of the slip, and as to extending its north arm sufficiently to meet the proposed new situation, his testimony was not that this was the best or proper thing to do. On the contrary, his opinion was, that the problem would be best solved by extending the pier-head of the Virginia-Street wharf north away from the ferry-slip rather than south toward it, and his reasons, as well as those of other experts seem to have been satisfactory to the court. The evidence was that plaintiff could not, except by the expenditure of several thousand dollars, so change its slip as to make it safe to operate the ferry should defendants' plans be carried out. But appellants claim that the city has the right to build a wharf at the point proposed; that in passing the ordinance in pursuance of this right the city necessarily and conclusively determined that there existed a public necessity for the wharf, and that it was therefore no infringement of any right vested in plaintiff, but that it is plaintiff's duty and is

its only right to adjust its means of enjoying its franchise to the needs of the city for the new wharf.

It cannot be doubted that the city has the right to construct a wharf at Virginia-Street water-front (sec. 34, Charter of the city,—Stats. 1899, p. 381), and it may be admitted that the necessity for establishing the wharf was determined by the ordinance authorizing its construction. But this does not mean that the city may in the exercise of such right interfere to the extent of destroying rights vested in others by the city, and that, too, without pretense of compensation.

The city does not own the water-front, and in building a wharf it proceeds under no general municipal powers to erect wharves, for it has none, and has only such as are given by its charter. (*Low* v. *Marysville,* 5 Cal. 214; *San Pedro* v. *Southern Pacific R. R. Co.,* 101 Cal. 333.) Section 2919 of the Political Code provides that ''No authority must be granted under this chapter to interfere with vested rights, nor to interfere with or infringe grants heretofore made by state authority.'' It would seem reasonable that if the city cannot grant wharf privileges which may interfere with vested rights it could not itself build a wharf so as to interfere with such rights. The court said in *San Pedro* v. *Southern Pacific R. R. Co.,* 101 Cal. 333: ''The authority given in this section [a charter provision similar to that in the Vallejo charter] does not, however, clothe the plaintiff with an absolute right to construct a wharf at any point on its water-front which it may select, irrespective of the rights of others; but it is intended to confer upon it the same authority to do the acts therein enumerated which a natural person would possess, and to give to its acts a sanction which it would not otherwise have.'' There is no evidence of any necessity for erecting the proposed wharf so as to interfere with plaintiff's rights. The evidence is, that no necessity for such a structure exists. The decree does not prohibit the building of such a wharf as the evidence shows is required and is best for the city. The claim that if the rights of plaintiff and defendants conflict the right of the municipality must prevail cannot be sustained in the present case. The authorities cited to the effect that the owner of a ferry franchise from the legislature of a state has no property in the flow of a river, and has no claim to compensation for injuries caused to him by an im-

provement of the river by the United States, do not apply. The doctrine invoked relates to the power of the general government as sovereign over the navigable waters of our country, such as Mare Island Straits. The city of Vallejo has no such power.

So far as we can discover, the decree was just and equitable and preserved to the city every right and privilege to which the evidence showed it has any reasonable or just claim.

It is advised that the judgment and order be affirmed.

Gray, C., and Harrison, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Van Dyke, J., Shaw, J., Angellotti, J.