[No. 15577. In Bank.—January 6, 1895.]

## H. M. LEVY, PETITIONER, *v.* SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, HON. J. V. COFFEY, JUDGE, RESPONDENT.

ESTATES OF DECEASED PERSONS—PROCEEDINGS AGAINST EMBEZZLER OF ESTATE—CONSTRUCTION OF CODE—REMEDIAL AND PENAL STATUTES—CONSTITUTIONAL LAW.—Sections 1458 to 1461 of the Code of Civil Procedure, providing for proceedings by an administrator to recover property of the estate of a decedent, alleged to have been embezzled by the defendant and converted to his own use, are remedial and not penal in their character, though providing redress in the way of imprisonment and damages under certain contingencies, as a means of enforcing the civil remedy provided for in those sections, and they are not in conflict with section 3 of article I of the constitution of the state, which provides that no person shall be compelled, in a criminal case, to be a witness against himself, or with section 19 of the same article, which provides that the right of the people to be secured in their persons, houses, papers, and effects against unreasonable seizures and searches, cannot be violated.

ID.—DISTINCTION BETWEEN PENAL AND REMEDIAL STATUTE.—The simple distinction between the provisions of a remedial statute for the enforcement of the remedy and a penal statute is that the penalty imposed by the remedial statute is not imposed as a punishment for a public wrong, but as redress for a private grievance.

ID.—PROHIBITION—JURISDICTION OF PROBATE COURT—QUESTIONS OF TITLE. The probate court will not be prohibited from proceeding under sections 1461 to 1468 of the Code of Civil Procedure, either upon the ground that those provisions are unconstitutional, or upon the ground that the proceedings in the probate court involve passing upon title to property, and are not within the jurisdiction of the court.

HEARING in the Supreme Court upon writ of prohibition to the Superior Court of the City and County of San Francisco, Department 9, Hon. J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

*Byron Waters, I. B. L. Brandt,* and *Reddy, Campbell & Metson,* for Petitioner.

Sections 1459 and 1460 of the Code of Civil Procedure, under which these proceedings were had, are unconstitutional. (Const., sec. 13, art. I, sec. 19, art. I.) These sections are also repugnant to the fourth and fifth amendments to the United States constitution, as they compel a person to be a witness against himself in a proceeding of a criminal nature, to wit, in a proceeding to recover a penalty. That these sections provide for a penalty is clear. (*Andrews* v. *Jones,* 3 Blackf. 444; *Taylor* v. *Sandiford,* 7 Wheat. 13; *Ashley* v. *Welam,* 2 Bos. & P. 346; *United States* v. *Chouteau,* 102 U. S. 611; Century Dictionary, 4368; 2 Burrell's Law Dictionary, 286; 2 Stephen's Commentaries, 159–62; 2 Story's Equity Jurisprudence, secs. 1313–26; Black's Law Dictionary, 884; *San Luis Obispo* v. *Hendricks,* 71 Cal. 245; *United States* v. *Mathews,* 23 Fed. Rep. 74; *United States* v. *Ulrici,* 3 Dill. 532; *People* v. *Nedron,* 122 Ill. 363; *Grover* v. *Huckins,* 26 Mich. 482; Rapalje & Lawrence's Dictionary, 945; *Sidebottom* v. *Adkins,* 5 Week. Rep. 743; *Boyd* v. *United States,* 116 U. S. 616; *Ex parte Gould,* 99 Cal. 360; 37 Am. St. Rep. 57.) In no case or proceeding, the object of which is to procure evidence against a person, to enforce a penalty or secure a forfeiture of his goods or chattels, can the defendant or respondent be compelled to be a witness against himself. (2 Story's Equity Jurisprudence, 1319, 1434, 1509; 1 Pomeroy's Equity Jurisprudence, sec. 202; *Pointdexter* v. *Davis,* 6 Gratt. 491; *Currier* v. *Concord R. R. Corp.,* 48 N. H. 321; *Livingston* v. *Harris,* 3 Paige, 534.) Assuming that the statute is valid under ordinary circumstances, still these proceedings are in excess of the jurisdiction of the court, as the court cannot pass upon the questions presented by this petition without passing upon the title to property, and that the probate court has no jurisdiction to do. (*Estate of Haas,* 97 Cal. 232; *In re Rose,* 80 Cal. 174; *In re Allgier,*

65 Cal. 228; *Richards* v. *Whitmore*, 66 Cal. 365; *Haverstick* v. *Trudel*, 51 Cal. 434; *Bush* v. *Lindsey*, 44 Cal. 124; *Ex parte Casey*, 71 Cal. 269; *Ex parte Hollis*, 59 Cal. 414; *Larrabee* v. *Selby*, 52 Cal. 506–08.) Title being denied, no questions can be asked as to the source of title. (*Hartman* v. *Olvera*, 51 Cal. 502, 503; *Hibernia etc. Soc.* v. *Superior Court*, 56 Cal. 265; *Theller* v. *Such*, 57 Cal. 447; *Crossman* v. *Crossman*, 21 Pick. 21; *Nutter* v. *Framingham etc. R. R. Co.*, 131 Mass. 231.) The contention that these proceedings will lie because they are in the nature of a bill in equity for a discovery is not well taken, as a bill of discovery will not lie to recover a forfeiture or a penalty. (1 Daniell's Chancery Practice, 717; 2 Daniell's Chancery Practice, 1557; 1 Pomeroy's Equity Jurisprudence, sec. 202, and authorities there cited under note 3.)

*Henry E. Highton,* for Respondents.

Sections 1458 to 1461 of the Code of Civil Procedure are but re-enactments of sections 116 to 119 of the former Probate Act of this state, and have been the law of this state since May, 1851. (Hittel's General Laws of California, 1850–54, secs. 5814–17.) In an action under sections 1458 to 1461 it was said that the sections were analogous in extent and object to the power exercised by courts of chancery upon bills of discovery. (*Mesmer* v. *Jenkins*, 61 Cal. 151, 154.) And a similar conclusion was reached in construing analogous statutes in Massachusetts and Maine. (*Selectmen of Boston* v. *Boylston*, 4 Mass. 318, 322, 323; *Fletcher* v. *Holmes*, 40 Me. 364, 368.) The question of title to property is not involved. Sections 1458 to 1461 of the Code of Civil Procedure do not purport to authorize the probate court to pass upon the title to property claimed adversely to the estate by a party cited for examination. (See *Ex parte Casey*, 71 Cal. 269; *Matter of Curry*, 25 Hun, 320, 322–24.) The sections are not penal, but remedial in nature. (*Jahns* v. *Nolting*, 29 Cal. 507.) The sections are not in conflict with any constitutional provision. The provisions of the constitution of California, article I, sections 13 and 19,

and of the constitution of the United States, fourth and fifth amendments, invoked by petitioner, relate solely to criminal proceedings, and do not apply to civil proceedings. (*In re Strouse*, 1 Saw. 605–07; *Matter of Meador*, 1 Abb. U. S. 317, 330, 331, 333.)

VAN FLEET, J.—Morris Hoeflich died at the city and county of San Francisco in May, 1891, and Solomon Hoeflich was, by the superior court of said city and county, appointed administrator of his estate.

Thereafter, on the         day of June, 1893, the administrator filed in said superior court a petition in the matter of said estate, averring, in substance, that it had come to his knowledge that said deceased was, at and prior to his death, a partner with one H. M. Levy, or engaged with said Levy jointly in a large number of transactions in stocks and mines in California and Nevada, and in other property, " the exact nature and extent of which transactions, and of the real and personal estate resulting therefrom, can be ascertained by an examination of the said H. M. Levy and other witnesses under oath, and by the production and examination of books of account, correspondence, checks, deeds, conveyances, bonds, contracts, and other writings and documents now in the exclusive possession of said H. M. Levy"; and also by the examination of other named persons and documents, etc., in their possession,

The petition further averred that said Levy has concealed, conveyed away, and disposed of moneys and property of said deceased, and has in his possession and within his knowledge, deeds and other documents and writings, " which contain evidences of and tend to disclose the right, title, interest, and claim of said deceased to real and personal property"—portions of such property being particularly described.   The prayer was that said Levy be cited to appear before said court and undergo an examination under oath, together with such witnesses as might be then produced, touching all the matters set forth in the petition, " and especially touch-

ing his possession and knowledge of any and all deeds, conveyances, bonds, contracts, or other writings, which contain evidences of or tend to disclose the right, title, and interest or claim of the decedent, Morris Hoeflich, to any real or personal estate, or any claim or demand, whatsoever"; and that said Levy be required to produce all said deeds, conveyances, and other writings, books of account, etc., for inspection and examination.

It response to a citation issued upon said petition said Levy appeared and demurred, which demurrer being overruled, he filed a verified answer specifically denying all the material averments of the petition; denied that he had any property in which the deceased was interested as a partner or otherwise, or that he had any documents or writings relating to any such property. He also filed written objections to any further proceedings in the matter of said examination; but the demurrer and the objections were overruled and a day was set by the court for the examination.

Thereupon said Levy filed his petition here setting up these facts, upon which he makes this application for a writ of prohibition directed to said court and the Hon. J. V. Coffey, judge thereof, commanding said respondents to refrain and desist from further proceeding with said contemplated examination.

An alternative writ was issued, in response to which respondents have demurred and answered, and the matter has since been argued and submitted.

The proceedings in the superior court which are called into question by this application for prohibition were admittedly taken under and in pursuance of sections 1459 and 1460 of the Code of Civil Procedure, and these sections are as follows:

"SEC. 1459. If an executor, administrator, or other person interested in the estate of a decedent complains to the superior court, or a judge thereof, on oath, that any person is suspected to have concealed, embezzled, smuggled, conveyed away, or disposed of any moneys, goods, or chattels of the decedent, or has in his posses-

sion or knowledge any deeds, conveyances, bonds, contracts, or other writings, which contain evidences of or tend to disclose the right, title, interest, or claim of the decedent to any real or personal estate, or any claim or demand, or any lost will, the said court or judge may cite such person to appear before such court, and may examine him on oath upon the matter of such complaint. If such person is not in the county where the decedent dies, or where letters have been granted, he may be cited and examined either before the superior court of the county where he is found, or before the superior court of the county where the decedent dies, or where letters have been granted. But if, in the latter case, he appears and is found innocent, his necessary expenses must be allowed him out of the estate."

"SEC. 1460. If the person so cited refuses to appear and submit to an examination, or to answer such interrogatories as may be put to him touching the matters of the complaint, the court may, by warrant for that purpose, commit him to the county jail, there to remain in close custody until he submits to the order of the court, or is discharged according to law. If, upon such examination, it appears that he has concealed, embezzled, smuggled, conveyed away, or disposed of any moneys, goods, or chattels of the decedent, or that he has in his possession or knowledge any deeds, conveyances, bonds, contracts, or other writings containing evidences of or tending to disclose the right, title, interest, or claim of the decedent to any real or personal estate, claim, or demand, or any lost will of the decedent, the court may make an order requiring such person to disclose his knowledge thereof to the executor or administrator, and may commit him to the county jail, there to remain until the order is complied with, or he is discharged according to law; and all such interrogatories and answers must be in writing, signed by the party examined, and filed in the court. The order for such disclosure made upon such examination shall be *prima facie* evidence of the right of the executor or administrator to

such property in any action brought for the recovery thereof; and any judgment recovered therein must be for double the value of the property as assessed by the court or jury, or for return of the property and damages in addition thereto, equal to the value of such property.   In addition to the examination of the party witnesses may be produced and examined on either side."

Petitioner contends that these provisions of the code are unconstitutional and void, and that the proceeding in the superior court is, therefore, without warrant of law.   His position is that they are obnoxious to several features of the constitution of the state, and more particularly to section 3 of article I, which provides that "no person shall . . . . be compelled in any criminal case to be a witness against himself"; and to section 19 of the same article which provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable seizures and searches, shall not be violated."

These two provisions of the constitution are of well-understood significance; they involve like principles, and, in considering the objection made, may be regarded as one.

The argument of petitioner is that the sections of the code referred to are distinctly penal in character, and contemplate a proceeding which is in its essential nature criminal, within the meaning of the above provisions of the constitution; that being a criminal proceeding, petitioner is protected by the constitution from being compelled to testify against himself or submit his books and papers in evidence.

There is no question that if petitioner's premises are correct his conclusion follows necessarily.   But his construction of the provisions in question cannot be sustained.   These provisions have received a construction at the hands of this court directly at variance with that put upon them by petitioner.   Sections 1458 to 1461 of the Code of Civil Procedure were, prior to the adoption

of the codes, a part of the old Probate Act, as sections
116 to 119; they are a part of the same article, and re-
late to the same subject, which is expressed in the title,
as "Embezzlement and surrender of property of the
estate." In the case of *Jahns* v. *Nolting,* 29 Cal. 507,
this court had occasion to construe section 116 of the
Probate Act (now section 1458 of the Code of Civil Pro-
cedure) upon the very feature now involved. That was
an action by an administrator to recover property be-
longing to the estate of his decedent, which he alleged
had been embezzled by defendant and converted to his
own use. The lower court held that the action was
brought under section 116 of the Probate Act, which
alone gave plaintiff a remedy for the wrong; that the
statute was penal in its nature, and that the plaintiff
was bound to prove the embezzlement as alleged, or fail
in his action. Judgment having gone against him, the
plaintiff appealed, and, in disposing of that question, the
court said:

"The position that section 116 affords the exclusive
remedy for embezzling and alienating the effects of
the deceased, intermediate the death of the deceased
and the grant of administration, cannot be maintained,
unless that section can be held to be a penal statute
. . . . The distinctions between penal and remedial
statutes are not always clearly marked, nor are the
authorities quite harmonious where statutes very sim-
ilar in their purpose and general terms have been
under review. A penal statute is one that imposes a
penalty or creates a forfeiture as the punishment for
the neglect of some duty or the commission of some
wrong that concerns the good of the public, and is com-
manded or prohibited by law. The law generally first
prescribes what shall or shall not be done, and then
declares the penalty. Its primary object is punishment,
and to deter others from offending in like manner,
though it may give the penalty, or some portion of it,
to the person who may prosecute the action. (*Reed* v.
*Northfield,* 13 Pick. 94; 23 Am. Dec. 662; *Suffolk Bank*

v. *Worcester Bank,* 5 Pick. 106; *Frohock* v. *Pattee,* 38 Me. 103; *Bayard* v. *Smith,* 17 Wend. 88; Sedgwick on Statutory and Constitutional Law, 390.") And it was held that the section was not penal, but purely remedial.

Sections 1459 and 1460 are strictly within the principles of construction announced in that case. They are no more penal in their essential features than is section 1458. It is true that, as urged by petitioner, they provide for pains and penalties in the way of imprisonment and damages under certain contingencies; but the essential distinction between these provisions and a penal statute is that the penalty is not imposed as a punishment for a public wrong, but as redress for a private grievance. And it is not unusual to find provisions of a similar character in statutes purely remedial.

Both before and since *Jahns* v. *Nolting, supra,* these sections have several times been under consideration by the court. In *Beckman* v. *McKay,* 14 Cal. 250, the court considered the action, which was brought under section 116 of the Probate Act, as in the nature of an action of trover and conversion; and in *Mesmer* v. *Jenkins,* 61 Cal. 151, it is said: "That under a statute very similar, if not precisely like, sections 1458 to 1461 of the Code of Civil Procedure the power of a judge of probate, in respect of matters of this kind, is analogous in its extent and object to the power exercised by courts of chancery upon bills of discovery."

Petitioner relies largely in support of his position upon *Boyd* v. *United States,* 116 U. S. 616, and *Counselman* v. *Hitchcock,* 142 U. S., 547. But we think those cases entirely distinguishable in principle from, and not at all in conflict with, the views expressed in *Jahns* v. *Nolting.* There are, it is true, some general expressions and language in those cases which, read without reference to the particular facts of those cases, might be construed as supporting the petitioner's position. But, when considered in the light of what was

before the court and the premises from which they were reasoning, any seeming conflict fades away. In the case of *Boyd* v. *United States,* 116 U. S. 616, a statute declared that any person who, with intent to defraud the revenue of the United States, should commit or omit certain acts, should for such offense be fined in any sum not exceeding five thousand dollars, nor less than fifty dollars, or be imprisoned for any time not exceeding two years, or both; and in addition should forfeit the merchandise in respect to which the wrongful acts were performed. Under this statute an information was filed against certain goods charging an offense under the act, and asking the forfeiture of the goods. In the course of the proceeding, Boyd having appeared as a claimant of the property and denied any act of forfeiture, and it being important to the government to show the quantity and value of the goods, a motion was made by the United States district attorney for an order directing the claimant to bring into court a certain invoice alleged to be in his possession and to contain proof of the truth of the allegations of fraud made by the United States. Such order was made, and, in obedience to it, the claimants produced the invoice, which was used as evidence against them on the trial.

Speaking of the character of the proceeding, it was said by the court (page 634): "In this very case the ground of forfeiture, as declared in the twelfth section of the act of 1874 on which the information is based, consists of certain acts of fraud committed against the public revenue in relation to imported merchandise, which are made criminal by the statute, and it is declared that the offender shall be fined not exceeding five thousand dollars nor less than fifty dollars, or be imprisoned not exceeding two years, or both; and, in addition to such fine, such merchandise shall be forfeited. These are the penalties affixed to the criminal acts, the forfeiture sought by this suit being one of them. If an indictment had been presented against the claimants

upon conviction the forfeiture of the goods could have been included in the judgment. If the government prosecutor elects to waive an indictment and to file a civil information against the claimants—that is, civil in form—can he, by this decree, take from the proceeding its criminal aspect and deprive the claimants of their immunities as citizens, and extort from them a production of their private papers, or, as an alternative, a confession of guilt? This cannot be. The information, though technically a civil proceeding, is, in substance and effect, a criminal one. . . . . As, therefore, suits for penalties and forfeitures incurred by the commission of offenses against the law are of this *quasi* criminal nature, we think they are within the reason of criminal proceedings for all the purposes of the fourth amendment of the constitution, and of that portion of the fifth amendment which declares that no person shall be compelled in any criminal case to be a witness against himself."

The difference in character between the proceeding under discussion there and the proceeding complained of here by petitioner was, however, recognized in the same opinion in the following language (page 624): "The entry upon premises, made by a sheriff or other officer of the law for the purpose of seizing goods and chattels by virtue of a judicial writ, such as an attachment, a sequestration, or an execution, is not within the prohibition of the fourth or fifth amendment or any other clause of the constitution; nor is the examination of a defendant under oath, after an ineffectual execution for the purpose of discovering secreted property or credits to be applied to the payment of a judgment against him, obnoxious to those amendments. But when examined with care it is manifest that there is a total unlikeness of these official acts and proceedings to that which is now under consideration. In the case of stolen goods the owner from whom they were stolen is entitled to their possession, and, in the case of excisable or dutiable articles, the government has an interest

in them for the payment of the duties thereon, and until such duties are paid has a right to keep them under observation or to pursue and drag them from concealment; and in the case of goods seized on attachment or execution the creditor is entitled to their seizure in satisfaction of his debt; and the examination of a defendant under oath to obtain a discovery of concealed property or credits is a proceeding merely civil to effect the ends of justice, and is no more than what the court of chancery would direct on a bill for discovery."

In the *Counselman* case, which was a case growing out of the refusal of Counselman to testify before a grand jury upon an investigation of alleged violations of "An act to regulate commerce," on the ground that his answers might tend to criminate him, the court held it was within the principles announced in the Boyd case, and reaffirmed those principles. The case of *Lees* v. *United States*, 150 U. S. 476, is another case falling strictly within the principles of *Boyd* v. *United States*, 116 U. S. 616.

These considerations dispose of the main objection of petitioner. The other objections to the constitutionality of the statute are, in our judgment, without merit.

Nor is the objection tenable that the proceeding in the probate court involves passing upon the title to property, and is on that ground without the court's jurisdiction. (*Ex parte Casey*, 71 Cal. 269; *Matter of Curry*, 25 Hun, 320.)

Writ denied.

FITZGERALD, J., HARRISON, J., GAROUTTE, J., and BEATTY, C. J., concurred.

McFARLAND, J., dissenting. — I dissent. This is an original petition here by H. M. Levy for a writ of prohibition to be directed to the superior court of the city and county of San Francisco, Department No. 9, and Hon. J. V. Coffey, judge thereof, commanding said court and said Coffey to refrain from further prosecuting a

certain proceeding instituted in said court against said petitioner. An alternative writ was issued; and on the return day the respondent demurred and answered, and the matter was then submitted.

It appears that the administration of the estate of one Morris Hoeflich, deceased, is pending in the court of respondent, sitting as a probate court; and that one Solomon Hoeflich is administrator of said estate. On the     day of June, 1893, the said Solomon Hoeflich, as such administrator, filed in said court, in the matter of said estate, a certain writing, or petition, the contents of which are substantially these: It is therein averred that, from information derived from persons whose names said administrator is unwilling to disclose, he has ascertained that the said deceased, Morris Hoeflich, prior to and down to the time of his death, "was either a full partner with the said H. M. Levy, or engaged with him jointly in a large number of transactions" in stocks and mines in California and Nevada, and in other property, "the exact nature and extent of which transactions, and of the real and personal estate resulting therefrom, can be ascertained by an examination of the said H. M. Levy and other witnesses under oath, and by the production and examination of books of account, correspondence, checks, deeds, conveyances, bonds, contracts, and other writings and documents now in the exclusive possession of said H. M. Levy"; and also by examination of other named persons and documents, etc., in their possession. It is also averred that said Hoeflich, deceased, before his death represented to a number of persons, whose names the administrator is unwilling to disclose, "that he was in partnership and had large joint interests with said H. M. Levy"; and that the fact that he made such representation "confirms and strengthens the information otherwise received by your petitioner, and the conviction produced thereby." It is also averred in general terms that said Levy has concealed, conveyed away, and disposed of moneys, etc., of the said deceased, and has in his possession, and

within his knowledge, deeds and other documents and writings " which contain evidences of, and tend to disclose, the right, title, interest, and claim of the said decedent to real and personal property," portions of said property being particularly described. The foregoing are, in brief, the material averments of said petition; and it was prayed therein that said Levy be cited to appear before said probate court and undergo an examination under oath as to all the matters set forth in said petition, and subject all his documents, writings, and papers to inspection and examination. A citation was issued according to the prayer of the petition to said Levy, who appeared and demurred to the petition; and, the demurrer having been overruled, he filed a lengthy written verified answer, in which he specifically denied all the material averments of said petition, and denied that he had any property in which the said decedent was interested, either as a partner or otherwise, or that he had any documents or writings of the character alleged in said petition. He also filed written objections to any further proceeding in the matter of said petition and citation; but the court overruled the objections and set a day for the examination. Whereupon the said Levy filed here the present petition for a writ of prohibition, setting up all the foregoing facts, and praying that the respondents be restrained from proceeding with said examination; and he contends that said proposed examination is beyond the jurisdiction of said court, and that certain provisions of the Code of Civil Procedure, upon which he contends the proceeding is based, are unconstitutional and void.

The proceeding sought to be prohibited, if valid at all, must rest for its validity upon sections 1459 and 1460 of the Code of Civil Procedure. Our general law of procedure is averse to proceedings which are in their character inquisitorial. The only provision in the Code of Civil Procedure in the nature of a bill of discovery other than said sections 1459 and 1460, is contained in section 1000, which provides that "any court in which

*an action is pending*, or a judge thereof, may, upon notice, order either party to give to the other, within a specified time, an inspection and copy, or permission to take a copy, of entries of accounts in any book, or of any document or paper in his possession, or under his control, containing evidence relating to the merits of the action or the defense thereto"; and the proceeding here in question is certainly not under that section. Of course, the probate court would have no jurisdiction over any action to determine conflicting rights of property between the estate of Hoeflich and the petitioner herein, H. M. Levy. Moreover, no such action is pending.

Sections 1459 and 1460, above referred to, are as follows:

" SEC. 1459. If any executor, administrator, or other person interested in the estate of a decedent complains to the superior court or a judge thereof, on oath, that any person is suspected to have concealed, embezzled, smuggled, conveyed away, or disposed of any moneys, goods, or chattels of the decedent, or has in his possession or knowledge any deeds, conveyances, bonds, contracts, or other writings, which contain evidences of or tend to disclose the right, title, interest, or claim of the decedent to any real or personal estate, or any claim or demand, or any lost will, the said court or judge may cite such person to appear before such court, and may examine him on oath upon the matter of such complaint. If such person is not in the county where the decedent dies, or where letters have been granted, he may be cited and examined either before the superior court of the county where he is found, or before the superior court of the county where the decedent dies, or where letters have been granted. But if, in the latter case, he appears, and is found innocent, his necessary expenses must be allowed him out of the estate."

" SEC. 1460. If the person so cited refuses to appear and submit to an examination, or to answer such

interrogatories as may be put to him touching the matters of the complaint, the court may, by warrant for that purpose, commit him to the county jail, there to remain in close custody until he submits to the order of the court, or is discharged according to law. If, upon such examination, it appears that he has concealed, embezzled, smuggled, conveyed away, or disposed of any moneys, goods, or chattels of the decedent, or that he has in his possession or knowledge any deeds, conveyances, bonds, contracts, or other writings containing evidences of or tending to disclose the right, title, interest, or claim of the decedent to any real or personal estate, claim, or demand, or any lost will of the decedent, the court may make an order requiring such person to disclose his knowledge thereof to the executor or administrator, and may commit him to the county jail, there to remain until the order is complied with, or he is discharged according to law; and all such interrogatories and answers must be in writing, signed by the party examined, and filed in the court. The order of such disclosure made upon such examination shall be *prima facie* evidence of the right of the executor or administrator to such property in any action brought for the recovery thereof; and any judgment recovered therein must be for double the value of the property as assessed by the court or jury, or for return of the property and damages in addition thereto, equal to the value of such property. In addition to the examination of the party witnesses may be produced and examined on either side."

It is contended by petitioner herein that these provisions are in contravention of section 13 of article I of the state constitution, which provides that "no person shall . . . . be compelled in any criminal case to be a witness against himself"; and of section 19 of the same article, which provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable seizures and searches, shall not be violated." He also contends that they contravene

section 11 of said article, which provides that "all laws of a general nature shall have a uniform operation"; and section 25 of article IV, which provides that no special law shall be passed "regulating the practice of courts of justice," for the reason that they give special privileges to administrators over other litigants. It is also contended that the probate court could not make the orders sought here to be restrained without passing upon rights of property between the estate of Hoeflich and said Levy, which it has no jurisdiction to do.

I shall not discuss any of the above positions taken by petitioner except the first two. The two provisions that a person shall not be compelled to be a witness against himself in a criminal case, and shall be secure against unreasonable seizures and searches, are so akin to each other that they are both covered by those judicial decisions and constitutional inhibitions which have established the personal rights and liberties of Englishmen and Americans. A compulsory production of a man's private papers is, in effect, compelling him to be a witness against himself. It will be sufficient, however, in this case to particularly consider only the first of these two provisions, although the second is necessarily involved. And basing our decision on that provision, I am of the opinion that upon the principles announced and the decisions made by the supreme court of the United States in the cases of *Boyd* v. *United States*, 116 U. S. 616, *Counselman* v. *Hitchcock*, 142 U. S. 547, and *Lees* v. *United States*, 150 U. S. 476, the contention of petitioner must be sustained, and that the writ of prohibition should issue as prayed for.

If the proceeding in the probate court sought here to be restrained were, *in form*, a "criminal case," there could be no plausible contention that, in view of section 13 of article I of the state constitution, the petitioner could be compelled to be a witness against himself. But in the Boyd case it was held that the fourth and fifth amendments to the federal constitution—which are similar to said sections 13 and 19 of our state constitu-

tion—applied to a proceeding to recover a penalty or forfeiture, although the proceeding was not criminal in form.    That was a suit to forfeit Boyd's property for an alleged violation of a revenue law, and the court held that to compel him to produce books and papers as evidence against him was a violation of said amendments. The court say that suits for penalties and forfeitures " are within the reason of criminal proceedings for all the purposes of the fourth amendment to the constitution and of that provision of the fifth amendment which declares that no person shall be compelled in any criminal case to be a witness against himself." The court further say that " illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure," and that " this can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed.    A close and literal construction deprives them of half their efficacy, and leads to gradual deprivation of the right, as if it consisted more in sound than substance."    Afterwards, the same court, in *Counselman* v. *Hitchcock*, 142 U. S. 547, expressly approved the decision in the Boyd case, and declared that in the Boyd case it was held that a statute which authorized a court to require a party to produce his private papers in court was "unconstitutional and void, as applied to a suit for *a penalty* or to establish a forfeiture of the goods of the party, because it was repugnant to the fourth and fifth amendments to the constitution"; and, furthermore, that "it is an ancient principle of the law of evidence that a witness shall not be compelled, *in any proceeding*, to make disclosures or to give testimony which will tend to criminate him or to subject him to fines, penalties, or forfeitures."    But the principle was still more directly decided in the late case of *Lees* v. *United States*, 150 U. S. 476.    That was a civil action brought by the United States to recover a penalty of one thousand

dollars for the violation of an act of Congress prohibiting the importation of aliens under contracts for labor. The circuit court compelled Lees, one of the defendants, to become a witness for the government against his objection that the suit was in the nature of a criminal proceeding, and that he could not be compelled to testify; and, on a writ of error to the United States supreme court, the judgment was reversed. The supreme court, by Mr. Justice Brewer, said: "This, though an action in civil form, is unquestionably criminal in its nature; and in such a case a defendant cannot be compelled to be a witness against himself. It is unnecessary to do more than to refer to the case of *Boyd* v. *United States*, 116 U. S. 616. The question was fully and elaborately considered in that case; and within the rule there laid down it was error to compel this defendant to give testimony in behalf of the government."

It is quite clear that said sections 1459 and 1460 include a "penalty" within the meaning of the authorities above noticed. Indeed, the whole scope of the proceeding which it is their purpose to authorize is, in its nature, *quasi* criminal. It is founded upon the fact that the party to be examined "is suspected" of being guilty either of the embezzlement or smuggling, or of the fraudulent concealment and secret and unlawful disposition of property of another. Certain things are to be done if he "is found innocent." But, if the contrary is found, then an order for disclosure is to be made, which he must obey or be sent to jail. And then it is provided that such order for disclosure shall be *prima facie* evidence of the right of the administrator to the property involved in any action brought for the recovery of such property ; and that "any judgment recovered therein *must be for double the value* of the property as assessed by the court or jury, or for return of the property and damages in addition thereto equal to the value of such property." It is thus sought to compel the party examined to testify and to produce his private papers for the purpose of furnishing evidence

upon which may be based an order that will make a *prima facie* case against him in an action for a penalty which may be of the most grave character.   If he be defeated in such action, although he may have defended it with the utmost good faith, and under an honest claim of right, the judgment against him will not be, as in ordinary civil actions, for the value of the property or its return with the usual incidental damages, but, in addition to that, the judgment "must be" for a second full value of the property as a penalty, and cases might easily arise where the amount of such penalty would greatly exceed the highest fine provided as punishment for a crime by any section of the Penal Code.   I am satisfied, therefore, that the said sections of the code are within the inhibition of the constitutional provision of said section 13 of the constitution of the state.   And under the rule, and the authorities above cited, a person in the position of the petitioner cannot be compelled to give testimony or produce papers which would tend to make a case against him, or furnish *data* or links of evidence favorable to such case.   I have just noticed the recent case of *United States* v. *James,* 60 Fed. Rep. 257, in which Judge Grosscup of the United States district court, North District, Illinois, in a very interesting opinion discusses the subject here under review at great length.   In that case the learned judge holds that a person cannot be compelled to testify or produce documents that may tend to criminate him, although there be a statute providing that he shall not be prosecuted or punished for the matter about which his testimony is sought.   He holds that the purpose of the fourth and fifth amendments was not confined to the protection of a witness against " law-inflicted pains and penalties only," but that the purpose was " to make the secrets of memory, so far as they brought one's former acts within the definitions of crime, inviolate as against judicial probe or disclosure"; and that " the privilege of silence, against a criminal accusation, guaranteed by the fif amendment, was meant to extend to all the co

quences of disclosure." This doctrine is, perhaps, extreme. It may be that a statute exempting a witness from prosecution, and from any exposure to penalties or forfeitures for the acts or things about which he is called upon to testify, might remove him from behind the constitutional shield. I have noticed the James case, however, because it is the latest judicial expression upon the general subject, and because the opinion discusses very fully the personal rights of individuals under English and American institutions. Of course, if our views hereinbefore expressed, and the authorities therein cited, are correct, the petitioner herein can invoke these constitutional principles equally with one who is a party to an action which is strictly in form criminal.

If the administrator of the estate of Hoeflich, deceased, believes, from information which he has, that said estate has a just cause of action against the petitioner herein, he has the privilege of bringing an action against said petitioner in the proper court; and when said action is pending he may avail himself, like other litigants, of the provisions of section 1000 of the Code of Civil Procedure to have an inspection of such books, documents, and papers in the possession of said petitioner as the court may deem proper, and may also examine said petitioner as a witness in the case.

I think that a peremptory writ of prohibition should issue as prayed for in the petition.

DE HAVEN, J., concurred.