[Sac. No. 1279.   Department One.—February 1, 1906.]

## G. C. HYATT, Respondent, v. C. E. WILLIAMS, Mayor of City of Stockton et al., Appellants.

MUNICIPAL CORPORATIONS—CONSTRUCTION OF CHARTERS.—A municipal corporation can only exercise the power granted in its charter by express words or by necessary or fair implication from the powers expressly granted, or essential to the declared objects and purposes of the corporation.   Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation; and the rule of strict construction applies to powers out of the usual range, or which may result in public burdens.

ID.—LIGHTING OF STREETS—PUBLIC BUSINESS — LIGHTING PLANT FOR USE OF INHABITANTS NOT AUTHORIZED.—A city charter which gives authority to the council to provide for and regulate the lighting of streets, avenues, and public places, and to provide for such lights as are necessary for the transaction of public business, does not authorize the city to establish a plant for furnishing light to the inhabitants generally for their private use.

ID.—POWER TO CONDEMN LAND FOR PUBLIC USE.—A power conferred by the charter to condemn land for public use cannot be construed

as authorizing public utility enterprises, such as the furnishing of water, gas, and light for the general use of the inhabitants; nor does the provision that when the council shall judge it necessary to take private property for public uses, it may direct proceedings by the city attorney under title VII of part III of the Code of Civil Procedure, make the provisions of that code part of the charter, so as to confer upon the city the power to supply light to the city and its inhabitants.

ID.—CONSTRUCTION OF BOND ACT.—The Bond Act of 1901 does not purport to give the city power to engage in the carrying on of the public utilities therein mentioned. Its purpose and object is to give the power to issue the bonds necessary for the constitution or maintenance of such public utilities in any case where by other provisions of law or of the charter the power to build works and operate such enterprises may be conferred.

APPEAL from a judgment of the Superior Court of San Joaquin County. Frank H. Smith, Judge.

The facts are stated in the opinion of the court.

R. L. Beardslee, and Budd & Thompson, for Appellants.

Nicol & Orr, and E. I. Jones, for Respondent.

SHAW, J.—This is an action to enjoin the defendants, who are respectively sued as mayor, members of the council, and clerk of the city of Stockton, from selling certain bonds amounting to $160,000, purporting to be bonds of the said city, authorized by the citizens thereof at an election held under the Bond Act of 1901. (Stats. 1901, p. 27, c. 32.) The object of the bond issue was to obtain funds wherewith to construct and maintain an electric lighting plant, by means of which the city proposes to light the streets, avenues, and public places of the city and to furnish the inhabitants of the city with light. We are asked to determine the single question whether or not the city of Stockton has power to engage in the business of furnishing light to its inhabitants for their private use. If it has such power, then, if its ordinary revenues are insufficient therefor, it unquestionably is empowered by the statutes of 1901 above cited to borrow money on its bonds for the purpose of constructing the necessary works.

The rule whereby to determine what powers are vested in a city, in addition to those which may be inherent in every

municipality, as stated by Mr. Dillon in his treatise on Municipal Corporations and approved in *Von Schmidt* v. *Widber,* 105 Cal. 157, [38 Pac. 685], is as follows: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: (1) Those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and the power is denied." (1 Dillon on Municipal Corporations, sec. 89.) "The rule of strict construction of corporate powers is applicable to grants of powers to municipal and public bodies which are out of the usual range, or which may result in public burdens." (Id., sec. 91.) The particular clauses of the charter which it is claimed conferred the power in question are as follows: "The council shall have power to pass ordinances: . . . (5) To provide for and regulate . . . lighting and watering of the streets, avenues and public places. . . . (17) To provide for . . . such lights . . . as are necessary for the convenient transaction of public business." (City Charter (Stats. 1889, p. 582, c. 11) sec. 30.) It is also provided that the city "may determine and declare what are public uses, and when the necessity exists of condemning lands therefor, and what are the lands it is necessary to condemn." (Stats. 1889, p. 578, c. 11, sec. 1.)

Applying the rule of construction above stated, we think it clear that these clauses do not grant power to maintain works and carry on the business of supplying the inhabitants of the city with light. The providing of light for the public purpose of lighting the public streets and public places, and such lights as are convenient for the transaction of public business, is a very small and insignificant enterprise as compared with that of supplying light to the inhabitants generally for their private use. The two objects are manifestly distinct, because of the different nature of the use to which the lights are to be devoted in the different cases. The terms of the express grant of the power to provide light for the public purposes named do not indicate any intention to give the distinct and larger power to establish a plant for furnish-

ing light for private use to all the inhabitants of the city who may desire it, and no such intention can be imputed to the framers of the charter from the language there employed. The power to determine what are public uses and to condemn lands for such use, if given the scope here contended for, would practically give the city power to engage in any enterprise of a public nature, whether mentioned specifically in the charter or not. The furnishing of water, gas, and light for the general use of the inhabitants, the establishment of street-car lines for the purposes of public travel, and other public utility enterprises, any of which would probably entail upon a city the necessity of incurring a debt and greatly increasing the burden of taxation, might be determined to be public uses, and under this general clause, if so construed, the city would have power to engage therein, to issue bonds therefor not exceeding fifteen per cent of the total assessed value of the property of the city, notwithstanding the fact that nothing is said concerning such enterprises in the charter. We are of the opinion that no such scope can be given to the language of this section, and that the power contended for is not conferred by its terms.

The question whether or not, if the city had erected or should erect a plant to supply electric light for the public streets, public places, and public buildings, it would have power to distribute any surplus thereof to the inhabitants for private use does not arise in the case. Decisions on this question, some of which are cited by appellant, have no bearing on the proposition presented in the case at bar. It is clear that the power to construct works, in whole or in part, for the express purpose of supplying light to the inhabitants is not incidental to or included in the power to construct such works to supply light for public streets and public buildings. There is another clause of the charter giving the council power to regulate "the erection of gas and electric lights in the streets." It cannot be reasonably contended that this clause gives any power to establish an electric lighting plant for the supplying of light to the inhabitants.

Section 210 (p. 636) of the charter provides that when the city council shall adjudge it necessary to take private property for public uses it may direct proceedings to be taken by the city attorney under title VII of part III of the Code

of Civil Procedure, to condemn the same. Section 1238 of this title of the Code of Civil Procedure provides that the right of eminent domain may be exercised for the purpose of supplying electricity to light or heat incorporated cities, together with the acquisition of lands, buildings, and all other improvements upon which to erect or operate machinery for the purpose of generating and transmitting electricity for such purpose. It is claimed the effect of section 210 of the charter is such that the entire chapter of the Code of Civil Procedure above referred to is made a part of the chapter, and that in consequence thereof there is conferred upon the city a power to supply light to the city and its inhabitants and to erect all such works as may be necessary for that purpose. This claim is clearly untenable. Section 210 does not make the Code of Civil Procedure a part of the charter, and it was not necessary that it should do so. A city would have the right to avail itself of the provisions of that chapter without express authority in the charter. The section by its own terms does not purport to grant any power except the power to condemn property. It does not purport to give power to maintain plants or works for the supplying of any of the public uses whatever.

It is not necessary to consider the effect of the amendment of the constitution making municipal charters paramount to general laws with respect to all "municipal affairs." The Bond Act of 1901, above referred to, does not purport to give the city power to engage in the carrying on of the public utilities therein mentioned. Its purpose and object is to give the power to issue the bonds necessary for the constitution or maintenance of such public utilities in any case where by other existing provisions of law or of the charter the power to build works and operate such enterprises may be conferred. The court below held that the city had not the power to issue the bonds for the purposes above stated, and thereupon gave judgment enjoining the defendants from selling or disposing of the said bonds. We think this action was correct.

The judgment is affirmed.

Angellotti, J., and McFarland, J., concurred.