[S. F. No. 19244. In Bank. May 27, 1955.]

WILLIAM R. HARDEN et al., Petitioners, v. THE SU-
PERIOR COURT OF ALAMEDA COUNTY, Re-
spondent; CITY OF HAYWARD, Real Party in Interest.

Popper & Burnstein and Robert C. Burnstein for Petitioners.

J. F. Coakley, District Attorney, R. Robert Hunter, Chief Assistant District Attorney, and Richard H. Klippert, Deputy District Attorney, for Respondent.

John W. Scanlon, City Attorney, Breed, Robinson & Stewart and Bestor Robinson, Special Counsel, for Real Party in Interest.

CARTER, J.—Petitioners, William R. Harden and Pearl B. Harden, his wife, Chester N. Harden and Virginia Hart Harden, his wife, seek a writ of prohibition to restrain further proceedings in an eminent domain action brought against them and other property owners by the city of Hayward.

Petitioners own certain land in Alameda County, lying adjacent to, but outside the corporate boundaries of, the city of Hayward. On June 28, 1954, petitioners obtained a building permit from the county of Alameda which author-

ized them to erect a department store building upon the land owned by them. Immediately after the building permit had issued, petitioners contracted with licensed contractors for the erection of their building at a cost exceeding $100,000. Construction was from 25 to 30 per cent completed when the City Council of Hayward, a municipal corporation of the sixth class, on October 5, 1954, passed a resolution authorizing the city attorney to proceed by eminent domain to acquire the property of petitioners together with that belonging to others for the purpose of establishing an off-street parking area. Upon the passage of this resolution, the city notified petitioners to desist from further construction of the building and petitioners thereupon ceased construction. When over two weeks elapsed without the filing of an action in eminent domain, petitioners again began construction of the building. The city then filed on October 26, 1954, its complaint in eminent domain to which petitioners demurred. The demurrer was overruled on November 22, 1954, and petitioners were given 10 days within which to answer the complaint. This petition for a writ of prohibition followed.

In addition to the above-mentioned facts, petitioners allege that all work has been stopped on the building; that the partially constructed building is in danger of being lost or destroyed by reason of the elements, theft or vandalism and that if such destruction occurs, they will suffer a loss in excess of $40,000; that the county of Alameda has ordered them to support laterally the masonry walls of the partially constructed building because of the abandonment of the construction pending the determination of the condemnation suit. Petitioners also allege that the loss they will suffer from the destruction of the existing structure is not compensable as damages in an eminent domain action and that if forced to support laterally the masonry walls, they will suffer additional expenses. It is contended that the city's complaint shows, on its face, that the action in eminent domain is not maintainable because a city of the sixth class may not exercise the power of eminent domain as to property outside its corporate limits; that if the superior court proceeds with the action, petitioners will suffer great loss; that an appeal from an adverse judgment is not an adequate remedy, and that a writ of prohibition should therefore issue. The city filed a memorandum in opposition, contending that the petition should be denied because an adequate remedy exists by way of appeal from the judgment; and that the complaint is not

defective on its face because a city of the sixth class may exercise the power of eminent domain outside its corporate limits.

We said in *Rescue Army* v. *Municipal Court*, 28 Cal. 2d 460, 462 [171 P.2d 8], that "The constitutionality of a statute or ordinance may be tested by prohibition on the ground that invalidity of the legislation goes to the jurisdiction of the court to proceed to try the case. (See *Whitney* v. *Superior Court*, 182 Cal. 114 [187 P. 12] ; *Levy* v. *Superior Court*, 105 Cal. 600 [38 P. 965, 29 L.R.A. 811] ; *Arfsten* v. *Superior Court*, 20 Cal.App. 269, 275 [128 P. 949] ; . . ."

We also said that "In prohibition, however, we are limited by statute to proceedings without or in excess of jurisdiction (Code Civ. Proc., § 1102) and we are therefore squarely confronted with the problems referred to above."

We went on to hold that when the trial court has heard and determined that it has jurisdiction, prohibition will lie to prevent the exercise thereof when that jurisdiction is challenged in that court "by demurrer, motion, plea or other objection of some kind." When the trial court has heard and determined the jurisdictional challenge and has decided in favor of its own jurisdiction, and then proceeds to act—to try the cause on its merits, it may then be claimed that a court without jurisdiction is purporting to exercise it. Then, jurisdiction to determine jurisdiction has been exercised and the higher courts will restrain the lower court from acting in excess of its jurisdiction. (*Greenberg* v. *Superior Court*, 19 Cal.2d 319 [121 P.2d 713] ; *Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715] ; *Jackson* v. *Superior Court*, 10 Cal.2d 350 [74 P.2d 243, 113 A.L.R. 1422].)

The city contends that prohibition will not lie in that petitioners have a speedy and adequate remedy by way of appeal. As was held in *Gorbacheff* v. *Justice's Court*, 31 Cal.2d 178, 180 [187 P.2d 407], the fact that an appeal is available does not, in and of itself, necessarily preclude resort to prohibition. Section 1103 of the Code of Civil Procedure authorizes the issuance of the writ, even though an appeal may be taken, if the remedy by appeal is inadequate. In the usual situation an appeal is considered an adequate remedy, "but no hard and fast rule can be laid down to determine in advance whether it fully meets the requirements of justice in a particular case."

We said in *Providence Baptist Church* v. *Superior*

*Court,* 40 Cal.2d 55, 60 [251 P.2d 10], that "It is the general rule 'that the remedy in the ordinary course of law by an appeal from the judgment at the end of the trial is not adequate when the court has no jurisdiction to proceed with the action and no appeal is available before final judgment. (*Tomales Bay etc. Corp.* v. *Superior Court,* 35 Cal.2d 389, 392 [217 P.2d 968].)' (*City of San Diego* v. *Superior Court, supra,* 36 Cal.2d 483, 485 [224 P.2d 685].) . . . ██ 'Where an order is not appealable, but is reviewable only upon appeal from a subsequent judgment, various factors, such as expense of proceeding with a trial and prejudice resulting from delay, may operate to make that remedy inadequate.' (*Phelan* v. *Superior Court,* 35 Cal.2d 363, 370 [217 P.2d 951].)"

 There is no appeal from the order overruling the demurrer (*Gossman* v. *Gossman,* 74 Cal.App.2d 233 [168 P.2d 495]; *Southern Calif. Tel. Co.* v. *Damenstein,* 81 Cal.App.2d 216 [183 P.2d 675]), hence, petitioners would be forced to go through the expense of the trial of the eminent domain action before an appeal from the judgment rendered therein was available to them and before it would be possible for an appellate court to test the city's right to exercise the power of eminent domain outside its corporate limits. In the interim, petitioners allege that the partially constructed building will suffer destruction from the elements, thieves and/or vandals, and that they have been ordered by the county to provide support laterally for the walls of said partially constructed building at an increased cost. It is also alleged that in the event the city should prevail in the eminent domain action, this additional expense would not be compensable as damages. The city argues that since values are fixed as of the date of issuance of summons (Code Civ. Proc., § 1249) it is immaterial whether the existing concrete block walls deteriorate or collapse. This contention does not answer petitioners' argument that the expense to which they will have been subjected by complying with the county's order to support the walls is not compensable, and it appears that it would not be. Petitioners also allege that the land belonging to them is a parcel of a larger area encompassed in the city's resolution and that others besides themselves will be affected by the city's allegedly unauthorized exercise of its power of eminent domain. ██ We held in *City & County of San Francisco* v. *Superior Court,* 38 Cal. 2d 156, 160 [238 P.2d 581], that prohibition would lie in a case where it appeared that otherwise a failure of justice

would occur in a matter of public importance by a wrongful or excessive exercise of jurisdiction. ▮ It would appear, therefore, that petitioners do not have a speedy and adequate remedy by appeal under the circumstances here presented.

With regard to the merits of the jurisdictional question involved, it appears that the city of Hayward, a city of the sixth class, acting under the general law, sought by resolution to institute an action in eminent domain to acquire property outside its corporate limits for off-street parking. Primarily, it should be noted that the city contends that petitioners failed to demur on the ground that the court had no jurisdiction or that the plaintiff had not the legal capacity to sue. (Code Civ. Proc., § 430.) Petitioners demurred on the ground (I) that the complaint failed to state facts sufficient to state a cause of action against defendants; and (II) that plaintiff's complaint was uncertain, (III) ambiguous, and (IV) unintelligible because (V) "it cannot be ascertained from plaintiff's complaint on file herein whether plaintiff is attempting to exercise the right of eminent domain in its capacity solely as a city of the Sixth Class, as the same is defined under the Constitution and Laws of the State of California, or whether it is exercising or attempting to exercise eminent domain as a 'City' under the Vehicle Parking District Law of 1943, the Parking Law of 1949 or the Parking District Law of 1951." The complaint alleged that plaintiff was a municipal corporation of the sixth class; that its legislative body had adopted a resolution by which it sought to condemn certain real property (described) owned by defendants located outside of its corporate boundaries; that the use for which the property was needed was one authorized by law. We said in the Rescue Army case, *supra,* that the jurisdiction of the trial court must be challenged in that court "by demurrer, motion, plea or other objection of some kind." ▮ A demurrer reaches only matters appearing on the face of the pleading to which it is directed (21 Cal.Jur., p. 94); ▮ and a demurrer to the jurisdiction of a court of general jurisdiction lies only where the want of jurisdiction appears affirmatively on the face of the complaint (*Doll* v. *Feller*, 16 Cal. 432; 41 Am.Jur., § 213, pp. 443, 444). ▮ It may be said here that the lack of jurisdiction appears from the city's allegation that the action involved land outside its corporate limits without alleging its authority to so condemn.

Petitioners did demur on the ground that the complaint

failed to state a cause of action. It is ordinarily said that the sufficiency of the complaint will not be inquired into on application for a writ of prohibition (41 Cal.L.Rev., 124 et seq.; *Lange* v. *Superior Court,* 11 Cal.App. 1 [103 P. 908]) and that where a demurrer is erroneously overruled, the litigant's only relief is an appeal from the final judgment. However, when it is shown that the court, in overruling the demurrer is proceeding without jurisdiction over the subject matter of the action, prohibition may issue. In *Ophir Silver Min. Co.* v. *Superior Court,* 147 Cal. 467, 478, 479 [82 P. 70, 3 Ann.Cas. 340], the court was prohibited from trying title to land in another state. In *People* v. *Superior Court,* 29 Cal.2d 754, 756 [178 P.2d 1, 40 A.L.R.2d 919], prohibition was held available at the pleading stage because a matter of considerable public importance was at issue. The court said: "A preliminary question concerns the propriety of the present proceeding. In the return to the alternative writ it is contended that prohibition is here sought for the purpose of correcting judicial error and that the petitioner should be relegated to the remedy by appeal." We said: "The defense of sovereign immunity from suit presents a jurisdictional question. . . . Prohibition may therefore be invoked under the conditions prescribed by section 1102 et seq., of the Code of Civil Procedure. Assuming that there would be a remedy by appeal in the pending action, the importance of the principal question is sufficient to support the present proceeding to the end that the issue speedily be determined. (*Rescue Army* v. *Municipal Court,* 28 Cal.2d 460, 467 [171 P.2d 8].) The fact that the peremptory writ may be denied in no way forecloses the court from exercising its constitutional and statutory power to entertain the proceeding." In *Northwestern Pac. R. Co.* v. *Superior Court,* 34 Cal.2d 454 [211 P.2d 571], prohibition was granted because of the failure of the plaintiff to comply with statutory preliminaries to maintain an eminent domain action in obtaining approval of the Public Utilities Commission before taking property used for a public utility service.

 If it appears that there was, as contended by petitioners, neither express statutory authority, nor case law, authorizing the city to proceed in eminent domain against property located outside its corporate limits, it would seem that prohibition would lie inasmuch as the trial court would then have no jurisdiction to proceed in the eminent domain action against these petitioners. In *Redlands High Sch. Dist.*

v. *Superior Court,* 20 Cal.2d 348, 360 [125 P.2d 490], the court was concerned with a discussion of the difference between errors of law as distinguished from an excess of jurisdiction. It appears that the trial court in the instant case erroneously passed on its own jurisdiction in overruling petitioners' demurrer. It would be acting in excess of its jurisdiction in trying an eminent domain action where the municipal corporation seeking to condemn did not have statutory authority so to do.

The city contends that it has the implied power to prosecute an eminent domain action against property outside its municipal boundaries and relies upon the *City of Pasadena* v. *Stimson,* 91 Cal. 238 [27 P. 604]. The Pasadena case involved a proceeding under section 1237 et seq. of the Code of Civil Procedure by the city to condemn a right of way for an outfall sewer from the city of Pasadena to a tract of land outside the city limits. The court there pointed out that one "main proposition" relied upon was that a municipal corporation of the fifth or sixth class must, as a condition precedent to invoking the exercise of the power of eminent domain, make an unavailing effort to agree with the owner of the property or right which it seeks to acquire, and consequently that it must, in any condemnation proceeding, allege and prove that it has made that effort. The court held that this condition destroyed the uniform operation of a general law "and is special in a case where a general law not only can be made applicable, but in which a general law had been enacted, and in which there is no conceivable reason for discrimination." The court cited section 1001 of the Civil Code which provides that any person may acquire private property for any use specified in section 1238 of the Code of Civil Procedure; and section 14 of the Civil Code which provides that a private or public corporation is a "person," and section 1238 of the Code of Civil Procedure which includes "sewerage" as one of the purposes for which private property may be taken. While the power of Pasadena to exercise eminent domain outside its corporate limits was not discussed in the opinion, the case inferentially stands for the proposition that it does have the power. ▪▪ However, in *Mulville* v. *City of San Diego,* 183 Cal. 734, 737 [192 P. 702], the question of the power of a city to exercise eminent domain outside its boundaries was indirectly involved. It was there said: "In general, a municipality is competent to act beyond its boundaries only in those cases in which it is so empowered by

legislative authority and it is necessary, in passing upon the validity of acts of a municipality performed beyond its boundaries, to look to the general laws and municipal charter for the requisite authority. In certain instances, owing to the urgency of extreme expediency or necessity, express authority is dispensed with and the power of the municipality to perform certain acts beyond its boundary is implied as incidental to the existence of other powers expressly granted. Thus, it has been held that, where a municipality has power to construct sewers, it may, as an implied incident .to such power, extend the same beyond its boundaries when necessary or manifestly desirable. (*McBean* v. *City of Fresno,* 112 Cal. 159 [44 P. 358, 53 Am.St.Rep. 191, 31 L.R.A. 794]; *City of Coldwater* v. *Tucker,* 36 Mich. 474 [24 Am.Rep. 601]; *Cochran* v. *Village of Park Ridge,* 138 Ill. 295 [27 N.E. 939]; 4 McQuillin on Municipal Corporations, sec. 1434.) McQuillin, in his work on Municipal Corporations, states the rule as follows: 'The general rule is that without legislative grant the authority of the municipal corporation is confined to its own area, hence its acts and ordinances have no force beyond its corporate limits. Thus, in the absence of such grant the municipality cannot open a street, repair a highway, grade an avenue, or aid in the construction of a plank road or bridge beyond its boundaries. Sometimes authority to act outside of the municipal boundaries may be implied on the ground of necessity, as for example, to obtain outlets for sewers and drains. . . . Likewise a municipality possessing power to supply its inhabitants with water, may acquire for that purpose, a water supply without its territory. . . .' (4 McQuillin on Municipal Corporations, § 1824.)'' The court continued: ''Therefore, in the case of a municipality, power to act outside of the boundaries of the municipality is dependent entirely upon legislative grant; it does not exist unless expressly granted, necessarily or fairly implied in or incident to the powers expressly granted, or essential to the declared objects and purposes of the corporation. (*Hyatt* v. *Williams,* 148 Cal. 585, 587 [84 P. 41]; *South Pasadena* v. *Pasadena Land etc. Co.,* 152 Cal. 579, 590 [93 P. 490].) By analogy the same rule applies in determining whether or not bonds of a municipal improvement district may be issued, the proceeds of which are to be used in the construction of public works outside of the boundaries of the district.'' It was concluded that the act involved provided for and permitted only such public improvements

as might be constructed wholly within the district. ██ We said in *City & County of San Francisco* v. *Ross, ante,* pp. 52, 55 [279 P.2d 529], "A municipal corporation has no inherent power of eminent domain and can exercise it, if at all, only when expressly authorized by law. (*Alexander* v. *Mitchell*, 119 Cal.App.2d 816, 821 [260 P.2d 261]; *Mackay* v. *City of Los Angeles*, 136 Cal.App. 180, 183 [28 P.2d 706]; *City of Los Angeles* v. *Koyer*, 48 Cal.App. 720, 725 [192 P. 301]; 10 Ruling Case Law 196, and cases there cited.)"

The city relies on section 1238.1 of the Code of Civil Procedure which provides:

"Subject to the provisions of this title, the right of eminent domain may be exercised in behalf of the following public uses:

"1. Off-street parking. Off-street motor vehicle parking places, including property necessary or convenient for ingress thereto or egress therefrom, established by any city or city and county for public use."

The city's argument is that the above section of the Code of Civil Procedure, taken together with sections 37351 and 37353 of the Government Code, authorize it to acquire property outside its corporate boundaries. Section 37351 provides in part: "The legislative body *may purchase, lease, or receive such personal property and real estate* situated *inside or outside* the city limits as is necessary or proper for municipal purposes. . . ." (Emphasis added.) Section 37353 provides in part: "The legislative body may acquire property needed for: (a) Parking motor vehicles." It is claimed that these sections and section 1001 of the Civil Code show that the subject of boundaries is extraneous to the exercise of the power of eminent domain except for the situation set forth in subdivision 2 of section 1241. Section 1241 provides that when two-thirds of the legislative body of certain municipal corporations, including cities, pass a resolution or ordinance finding that the public interest and necessity require the taking, that finding is conclusive evidence on the question of necessity as to property within the city. The section also provides that "said resolution or ordinance shall *not* be such conclusive evidence in the case of the taking by any county, city and county, or incorporated city or town, or school district, or irrigation, public utility, or water district, of property *located outside* of the territorial limits thereof." (Emphasis added.) It is contended that by "clear implication," the sections authorize the exercise of the power outside the cor-

porate limits. Another section relied upon by the city is section 40404 of the Government Code which provides in part that "The legislative body may acquire private property by condemnation or otherwise when it is necessary to take or damage such property for: (f) Any other purpose authorized by law." It should be noted that in none of the sections cited by the city is the taking of property outside the corporate boundaries specifically authorized. In *City of Madera* v. *Black*, 181 Cal. 306, 312 [184 P. 397], which involved Madera, a city of the sixth class, the city attempted by ordinance to impose a monthly sewage rate, or charge, for each dwelling house occupied by a single family. The court held that an ordinance which imposed sewer rates for purposes additional to that of paying the expenses of repairs and maintenance was void. It was said: "It is the settled law of this state and the general rule everywhere that 'language purporting to define the powers of a municipal corporation is to be strictly construed, and that any "fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and the power is denied." ' (1 Dillon on Municipal Corporations, § 89.) It is declared, 'as a general and undisputed proposition of law, that a municipal corporation possesses and can exercise the following powers and no others: 1. Those granted in express words; 2. Those necessarily or fairly implied in or incident to the powers expressly granted; and, 3. Those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable.' (*Oro Electric Co.* v. *Railroad Com.*, 169 Cal. 477 [147 P. 122].) The court in that case cited *Von Schmidt* v. *Widber*, 105 Cal. 151 [38 P. 682], and *Hyatt* v. *Williams*, 148 Cal. 585 [84 P. 41], both of which fully sustain the quotations above made. Similar expressions are found in *San Christina etc. Co.* v. *San Francisco*, 167 Cal. 771 [141 P. 384, 52 L.R.A. N.S. 676], *Connelly* v. *San Francisco*, 164 Cal. 105 [127 P. 834], *Redondo Beach* v. *Cate*, 136 Cal. 146 [68 P. 586], and *Low* v. *Marysville*, 5 Cal. 214." In *City of Salinas* v. *Pacific Tel. & Tel. Co.*, 72 Cal.App.2d 494, 499 [164 P.2d 905], it was again held (citing *Von Schmidt* v. *Widber*, 105 Cal. 151, 157 [38 P. 682], *Hyatt* v. *Williams*, 148 Cal. 585 [84 P. 41]; *Oro Electric Corp.* v. *Railroad Com.*, 169 Cal. 466, 477 [147 P. 118], *City of Long Beach* v. *Lisenby*, 175 Cal. 575, 576 [166 P. 333], *City of Madera* v. *Black*, 181 Cal. 306, 312 [184 P. 397], *Miller* v. *City of Los Angeles*, 185 Cal. 440, 444 [197 P. 342]) that any fair, reasonable, substantial doubt

642

concerning the existence of power is resolved by the courts against the corporation and the power is denied.

A liberal construction of the word "purchase" found in section 37351 of the Government Code could, conceivably, lead to the conclusion that the city of Hayward had statutory authority to exercise its power of eminent domain outside its corporate limits. However, if we are to follow the rule of strict construction found in the case of *City of Madera* v. *Black, supra,* 181 Cal. 306, 312 (as heretofore set forth), we cannot say that the word "purchase" *expressly* authorizes the city to take private property for off-street parking outside its boundaries by eminent domain proceedings.

Let the writ issue as prayed for.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.