[L. A. No. 6517. In Bank.—April 1, 1921.]

ABNER MILLER, Respondent, v. THE CITY OF LOS ANGELES (a Municipal Corporation), et al., Respondents; MARY RIDEOUT, Intervener and Respondent; MARY H. MORGAN, Intervener and Appellant.

[1] MUNICIPAL CORPORATIONS — AUTHORITY TO PURCHASE ELECTRICITY FOR RESALE — VALIDITY OF CONTRACT — LOS ANGELES CHARTER.— The city of Los Angeles has authority under subdivision 7, section 2, of article I of its charter to enter into a contract with a private corporation by which the city agrees to purchase from the corporation for a period of years all electric energy necessary for distribution to its consumers on the municipal system in excess of that produced by the power-generating plants owned and operated by the city.

[2] Id.—Authority to Sell. Electricity — Validity of Contract— Los Angeles Charter.—The city of Los Angeles has authority under subdivision 7, section 2, article I of its charter to enter into a contract with a private corporation giving the latter the right for a period of years to purchase from the city all surplus electric power produced at the city's generating plants and not necessary for distribution to the consumers through the city's distributing system or for sale to the city of Pasadena for distribution and use within that city.

[3] Id.—Authority to Purchase Distributing System—Validity of Contract—Los Angeles Charter.—The city of Los Angeles has authority under paragraphs (d) of subdivision 7 of section 2 of its charter to enter into a contract for the purchase of the electric distributing system of a private corporation within the corporate limits of the city on a cash basis for a fixed price without submitting it for approval by a majority of the qualified electors of the city.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Affirmed.

The facts are stated in the opinion of the court.

Overton, Lyman & Plumb and Wm. B. Himrod for Intervener and Appellant.

Charles S. Burnell, City Attorney, W. B. Mathews, Ray C. Eberhard and Lewis E. Whitehead for Respondents, City of Los Angeles et al.

SLOANE, J.—This is an appeal from a judgment for defendants in a taxpayers' action against the city of Los Angeles to enjoin the carrying out of a contract of date May 26, 1919, between the Southern California Edison Company, a corporation, on the one part, and the city of Los Angeles, on the other.

The contract is one whereby, first, the California Edison Company agrees to sell to the city of Los Angeles and the city agrees to buy the entire electric distributing system of the company within the corporate limits of the city at a

2. Right of municipality to make profit from its water or lighting plant, note, 24 L. R. A. (N. S.) 290.

3. Power of municipal corporation to own electric light plant, notes, Ann. Cas. 1916B, 523; Ann. Cas. 1918A, 259; 15 L. R. A. (N. S.) 711.

price of eleven million dollars. Secondly, the contract contains a further provision that the city shall purchase from the company during a period of thirty years all electric energy necessary for distribution to its consumers on the municipal system in excess of that produced by the power-generating plants owned and operated by the city, and thirdly, the contract contains a provision that the company shall have the right for a period of fifteen years to purchase from the city all surplus electric power produced at the city's generating plants and not necessary for distribution to the consumers on the city's distributing system or for sale to the city of Pasadena for distribution and use within that city.

Other phases of this contract were originally involved in the action, but the three propositions above referred to are all that remain in controversy on this appeal.

The moving parties to the action in the lower court were the plaintiff and two interveners, appearing separately as individual citizens and taxpayers, in opposition to the contract. Judgment was for the defendant as against plaintiff and both interveners. Only the intervener Mary H. Morgan has appealed, and her attack is upon the general provisions of the contract above stated and presents the following three grounds of opposition:

First, that the city has no power to purchase electricity in bulk and resell and distribute the same to its inhabitants; second, that the city has no power to sell electricity to the Southern California Edison Company for resale and distribution by that company to consumers outside of the city of Los Angeles; third, the contract of purchase has never been approved by a majority of voters of the city of Los Angeles.

The provision of the contract against which the first objection is directed is contained in subdivision 7 thereof, as follows:

"Seventh: The company shall sell, furnish and deliver to the city, and the city shall purchase and take from the company, . . . electric energy as follows, to wit:

" (a) All electric energy which the city shall require each year for and during the period of ten years from and after the date of the transfer and delivery to the city of said properties of the company . . . in order to supply consumers served by the city for use within the limits of the city, as

aforesaid, in excess of the amount which the city shall generate at hydro-electric plants now or hereafter owned or controlled by it; . . .

"(b) All electric energy which the city shall require each year for and during a period of twenty years immediately succeeding the aforesaid ten year period, in order to supply consumers served by it for use within the limits of the city, as aforesaid, in excess of the amount which the city shall generate at electric plants of any kind now or hereafter owned or controlled by it; . . . "

Appellant claims that while the city of Los Angeles, under certain provisions of its charter, has authority to acquire by purchase or otherwise the necessary plants, machinery, and equipment for manufacturing and distributing electric light and energy for the use of the municipality and its inhabitants, it is without power to purchase the manufactured article in quantity for such use and distribution.

[1] It is contended by respondent that authority exists for such purchase of electric energy in bulk under subdivision 7, section 2, of article I of the Los Angeles city charter.

That section provides that the city shall have the right and power "to acquire by purchase, condemnation, lease, gift or otherwise, or to construct, extend, maintain and operate, within or without the city limits, any and all plants and property necessary or convenient for furnishing the city and its inhabitants . . . with . . . light, heat, power, or any other public service."

Stripping this section of the charter of all expressions nonessential to the point in controversy, respondent would have it read thus: The city shall have the right and power "to acquire by purchase . . . or otherwise . . . any and all property necessary or convenient to furnish the city and its inhabitants . . . with . . . light, heat, power." In a broad analysis of the term it can hardly be disputed that electrical energy as manufactured and supplied for public and private use is property. Electricity is rather an intangible asset, and the word "property" is perhaps not the most apt word by which to describe the supply of electrical energy thus sought to be acquired for the use of the city. However, if it was a water supply to be delivered from without to the mains of the city's distributing system it

might appropriately be so described, and an electric current to be delivered at the main conduit of the city's electrical distributing system is not essentially different.

Conceding the limitations of the powers of a municipality to such as are expressly granted or necessarily implied from powers expressly given, and that language purporting to define the powers of a municipality is to be strictly construed (*Oro Elec. Corp.* v. *Railroad Com.*, 169 Cal. 466, [147 Pac. 118]; *Hyatt* v. *Williams*, 148 Cal. 585, [84 Pac. 41]; *Wichmann* v. *City of Placerville*, 147 Cal. 162, [81 Pac. 537]; 1 Dillon on Municipal Corporations, 5th ed., par. 237), we have here an express authority granted under the city charter to acquire and distribute such property as is necessary or convenient for supplying the city and its inhabitants with light, heat, power, or any other public service, and this general purpose being express and definite, the means for carrying it into effect is within the reasonable discretion of the city authorities.

Counsel for appellant contend that this authority is not general but special and limited; that it is confined by the use of the terms "plants and property" to an equipment for manufacturing its own supply of electrical energy, and they call attention to the more general provision as it existed under an earlier expression of this same section of the charter where the city was in terms given power "to provide for supplying the city and its inhabitants with water, gas, and electricity, or any thereof." Under the amendment of 1913 this general clause was eliminated and the section re-enacted as hereinbefore quoted, thereby, as appellant claims, restricting the general power of the city. There are other sections of the charter, however, that seem to supply this general authority or at least to justify the broader interpretation of subdivision 7 of section 2 of article I, claimed by the respondent. Subdivision (g) of section 192, article XVIII, after authorizing the board of public service commissioners to construct, operate, maintain, and extend electric plants, systems, and equipments, declares that said board shall have power "to acquire and take by purchase, lease, condemnation, or otherwise, and in its own name to hold as special trustee for the city any and all property situated within or without the limits of the city that may be necessary or convenient for such construction, operation, mainte-

nance, or extension." Subdivision (50) of section 2 of the charter contains this general rider, apparently intended to cover all contingencies in the way of acquiring and operating municipal utilities:

"The city of Los Angeles shall have and it is hereby given and it hereby reserves unto itself, and the people of the city hereby reserve unto it, and the people of the state of California hereby grant unto it, and said city may hereafter exercise each and every of the powers which a municipal corporation might or could exercise under the Constitution of the state of California; and said city may hereafter acquire, own, hold, sell, deal in, manage, operate or control any office, department, business, enterprise, utility, or property which might or could be acquired, owned, held, sold, dealt in, managed, operated or controlled by any person, firm or corporation whatsoever; provided, that under the authorization of this subdivision the city of Los Angeles shall not engage in any purely commercial or industrial enterprise not now engaged in by the city, except on the approval of a majority of the electors voting thereon at an election. By the insertion in this Charter of the sentence next preceding the present sentence, the city of Los Angeles and the people thereof intend, and the people of the state of California, acting by and through the Legislature thereof in ratifying this Charter, intend that the said sentence shall be, and is hereby declared to be, an express grant of the powers referred to therein, without a more specific enumeration or designation."

The power here sought to be exercised is to purchase from sources without the city such amount of electrical energy to be supplied for distribution through its own distributing system as may be required to supplement the product of the city's own generating plants. We are of the opinion that such a contract as is here involved constitutes under the terms of the charter a purchase of property necessary or convenient for furnishing the city and its inhabitants with an authorized public service.

The convenience and economy of public service which is thus secured by a contract providing against any deficiency in the supply of electricity for public use would seem to be further served by an arrangement for the sale to a public service corporation outside the city of any surplus electrical

energy the city may from time to time have on hand after supplying all its municipal demands and private or municipal customers.

Such is the purpose of the provision of the contract between the city of Los Angeles and the Southern California Edison Company, against which appellant's second objection is directed.

[2] It is declared by section 9 of the contract that if at any time within fifteen years after the contract goes into effect the city shall generate a surplus of electric energy in excess of the amount required to supply the city of Los Angeles and its consumers in such city and in the city of Pasadena, it may sell, during such period, such surplus to the Southern California Edison Company on terms to be fixed by the proper authorities.

It is further provided by the contract that the agreement shall not become effective until the same is approved by the Railroad Commission of California and until the provisions for sale of such surplus shall have been assented to by two-thirds of the qualified voters of said city voting on the proposition at a general or special election.

The contention of appellant is that the city of Los Angeles under its charter has no authority to dispose of its surplus electrical power for resale or distribution excepting to other municipal corporations.

Subdivision 7 of section 2, article I, of the charter, however, provides generally that the city shall have power "to sell the products or service" of any utilities described in that subdivision. Subdivision 17 of section 2 grants power "to sell gas, electric current and all products of any public utility operated by the city." Subdivision (50) of section 2, hereinbefore quoted, declares that said "city may hereafter acquire, hold, sell . . . any business enterprise, utility or property," and further sets forth that such provision "is an express grant of the powers referred to therein without a more specific enumeration or designation."

In the light of this general grant of power to sell we are of the opinion that the other charter provisions relied upon by appellant as a negation of such power are only a limitation to the extent that they impose certain conditions upon certain sales.

Subdivision (41) of section 2 declares that "no electric power now or hereafter owned or controlled by the city shall ever be sold, transferred, leased or disposed of to any person or corporation for resale, rental, disposal or distribution to consumers or other persons without the assent of two-thirds of the qualified voters of said city."

It is then provided by this section of the charter that the provision just quoted shall not apply to the ordinary sale of electric power to consumers in or out of the city for their own use, "or to other municipal corporations for municipal use or for resale and disposal by such municipal corporations to consumers within such municipality."

The reference, in the first sentence quoted, to disposal of electric power to "corporations for resale, rental, disposal or distribution to consumers" cannot be construed to refer to municipal corporations, but is obviously a limitation of a general power to sell to private corporations, by requiring such sale to be first approved by a two-thirds vote of the people. Read in connection with the general power to sell utilities, products, or service, heretofore cited, we think this provision of subdivision (4) establishes authority under the charter to make the sale here contracted for, it appearing by the record that such proposition was submitted at an election held for that purpose and approved by two-thirds of the voters.

The validity of this election was upheld in a contest in the superior court of Los Angeles County, which judgment is now affirmed by the decision of this court (*Rideout* v. *City of Los Angeles, ante,* p. 426, [197 Pac. 74]).

[3] The third contention of appellant is that the contract for the purchase of the distributing system of the Edison Company within the city of Los Angeles is void because it has never been submitted to or approved by a majority of the qualified electors of the city.

Respondents deny that such a submission and approval is required by the charter. The decision on this point depends entirely upon the construction of paragraph (d) of subdivision (7) of section 2 of the charter. By this provision the city is empowered, "To enter into a contract with the owner of any public utility held or operated under franchise rights acquired prior to the adoption of this charter by the terms of which contract the city may . . . agree to purchase all or

any part of the property of such utility upon paying therefor a price to be paid in accordance with the terms of the contract.''

' Thus far this power of contract stands unrestricted. Immediately following the sentence just quoted, however, it is further declared: ''Such contract may provide that the city may acquire the utility subject to all or any portion of the outstanding indebtedness against the same, within the limitations above prescribed, but no such contract shall be valid until it is approved by a majority of the qualified electors of the city voting thereon at an election.'' The question in dispute is as to whether this requirement, for submission to a vote of the electors, applies alone to ''such contract'' providing that the city shall purchase the utility ''subject to its outstanding indebtedness,'' or whether it also governs the general power contained in the first sentence of paragraph (d) to contract and purchase at a fixed price.

Considering the fact that the requirement for an election is part of the same sentence with the authorization to enter into a contract of purchase subject to outstanding indebtedness, the logical and grammatical interpretation would be to apply the election requirement solely to this form of purchase. This construction is also supported by the fact that further modifying provisions of paragraph (d), which obviously relate to either form of contract, are set out in separate sentences, and contain words of inclusion showing their general application. These remaining provisions of paragraph (d) are as follows: ''The financial obligation assumed by the city under any such contract shall not be subject to the debt limitation [of the city] until the purchase is actually consummated and then may be exempted by ordinance approved by a majority of the electors voting at an election, from such limitation, if the state railroad commission shall determine that the utility is self-sustaining.'' ''The provisions of the contract in this paragraph (d) mentioned need not include any, and the sale contract shall not be subject, as to the price to be paid thereunder, to any limitation prescribed in section 2 of this charter of which section this paragraph (d) is a part.'' ''Nothing in any such contract contained shall operate to extend the term of any franchise of any utility therein mentioned.''

The reason for subjecting a contract which assumes an outstanding indebtedness to the approval of the voters is the fact that it might otherwise come in conflict with the provisions of section 6, article XI, of the constitution forbidding without such approval the incurring of an indebtedness exceeding the yearly income of the municipality.

In the second sentence of this paragraph above quoted the words "within the limitations above prescribed" refer back to a preceding paragraph, (a), which limits the indebtedness of a utility that the city may take over to an amount not exceeding the purchase price to be paid by the city, and the subsequent reference to exemption from limitation of indebtedness by approval of the voters upon determination of the Railroad Commission relates back to paragraph (c) of the section which provides for such action whenever the public utility purchased shall be determined by the Railroad Commission to be self-sustaining and the exemption is approved by a majority vote of the electors.

The whole paragraph is sufficiently ambiguous and confusing, but it does not appeal to us as a reasonable construction that these words requiring ratification by an election should have been coupled with and limited to a separate sentence with an entirely separate and distinct form of contract of purchase, if it was intended thereby to govern the entire subject matter of the subdivision.

Another circumstance is that the city of Los Angeles, under the powers enumerated in section 2 of the charter, is authorized to purchase lands, rights, and properties, to purchase, lease, condemn, or otherwise construct, own, maintain, and equip telephone systems, telegraph systems, street railways, steamboats, and other means of conveyance, improve, maintain, and control its waterfronts and harbors, build wharves, acquire and operate warehouses, bunkers, wharves, and dry-docks, and engage in numerous other enterprises which would involve great expenditures, without submitting the question of such expenditure to a vote of the electors.

There is no reason in the nature of the transaction covered by this subsection of the charter why the requirement for approval by the electors which, under the ordinary grammatical construction of the language used, would seem to be limited to such contracts as involve an assumption of outstanding indebtedness of the utility purchased, should be

CLXXXV Cal.—29

extended by implication to an ordinary purchase of a public utility on a cash basis and within the means of the city, more than to the numerous other contracts and purchases authorized without such restrictions.

The judgment is affirmed.

Lennon, J., Shaw, J., Olney, J., Wilbur, J., Lawlor, J., and Angellotti, C. J., concurred.